Alan Harris (SBN 146079)
David Garrett (SBN 160274)
Priya Mohan (SBN 228984)
Min Ji Gal (SBN 311963)
**HARRIS & RUBLE**
655 North Central Ave., 17th Fl.
Glendale, California 91203
Facsimile:  (323) 962-3004
aharris@harrisandruble.com
dgarrett@harrisandruble.com
pmohan@harrisandruble.com
mgal@harrisandruble.com

*Attorneys for Plaintiffs*
*William Mann and Alex Rojas*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| WILLIAM MANN, ALEX ROJAS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ABC SIGNATURE, LLC, a Delaware Limited Liability Company; TWENTIETH CENTURY FOX FILM CORPORATION, a Delaware Corporation; JAMES M. KAPENSTEIN, an individual,<br><br>Defendants. | Case No: 2:22-cv-06628-SSS-KKx<br>Assigned to Hon. Sunshine S. Sykes<br><br>(Removed from Los Angeles Superior Court, Case No. 22STCV08620)<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT OF MOTION**<br><br>Date:   October 27, 2023<br>Time:   2:00 p.m.<br>Ctrm:   2, Second Floor<br>        3470 Twelfth Street<br>        Riverside, CA 92501<br><br>Action Filed: March 9, 2022<br>Removed:   September 15, 2022 |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:  PLEASE TAKE NOTICE** that, on October 27, 2023, at 2:00 p.m., in Courtroom 2 of the above-captioned Court located Riverside, California, or on such other date and time as the Court may designate, the Honorable Sunshine S. Sykes presiding, Plaintiffs William Mann ("Mann") and Alex Rojas ("Rojas") will move for an order granting preliminary approval of a class-wide compromise reached in the above-captioned action, as well as for conditional certification, for settlement purposes only, of the Settlement Class defined in the Stipulation of Settlement and Release (the "Settlement").  The Settlement is attached as Exhibit 1 to the Declaration of Alan Harris in Support of the Motion for Preliminary Approval.[1]  The non-reversionary Settlement provides for a gross fund of $4,800,000 to be distributed to no more than some 34,640 persons, resulting in a minimum average $138.57 gross payment to each person (=$4,800,000 / 34,640 Class Members).  To the extent this Motion is granted prior to the date on which the total of Class Members reaches 34,640 persons, the average per person recovery will increase.  Settlement ¶ 4.

For purposes of identification of Class Members and allocation of the settlement proceeds, the Class Members have been divided into two cohorts:  from (1) February 10, 2018, for any Class Member formerly or currently employed by TCFFC, and (2) March 9, 2018, for any Class Member formerly or currently employed by ABCSL.  Settlement at ¶ 4.  The cut-off date for determining who is in the settlement class is the earlier of the date of preliminary court approval of the Settlement Agreement or the date on which the number of unique individual Class Members exceeds 34,640.  The claims at issue in the case are for violation of the Fair Labor Standards Act (the "FLSA"), the California Business & Professions Code, and the following provisions of the California Labor Code

---

[1] The Motion is intended to ultimately result in the settlement and dismissal of the class and representative actions entitled "*Alex Rojas, individually, and on behalf of all others similarly situated, Plaintiffs vs. Twentieth Century Fox Film Corporation, a Delaware Corporation, Defendants*," Case No. 2:23-CV-02652-SSS (KKx)  (the "Rojas Lawsuit"), and "*William Mann, individually and on behalf of all others similarly situated, Plaintiff v. ABC Signature, LLC, a Delaware Limited Liability Company; and DOE 1 through and including DOE 10; and  DOES 1 to 50*," Case No. 2:22-cv-06628-SSS (KKx) (the "Mann Lawsuit"), both pending before the United States District Court for the Central District of California. On June 7, 2023, the parties filed a stipulation to the filing a Second Amended Complaint (the "SAC"), which adds Rojas as an additional plaintiff in the first-filed Mann Lawsuit.

(the "Code"):  (1) §§ 201.3, 201.5, and 203 Continuing Wages; (2) § 226(a), Failure to Provide Compliant Wage Statements; (3) §§ 226.7, 512 and Wage Order No. 12, Failure to Provide Meal Breaks; § 226.7 and Wage Order No. 12, Failure to Provide Rest Breaks; (4) § 510, 515, and 1194 Failure to Provide Pay Proper Overtime; (5) §§ 1194 and 1198 Failure to Provide Pay Proper Minimum Wages; (6) Code § 2802, Failure to Reimburse Business Expenses, including cell phone expenses; and (7) §§ 2698, *et seq.,* Civil Penalties under the Private Attorney Generals Act of 2004 ("PAGA").

        Since up to 34,640 workers are eligible to recover, the gross settlement fund represents a possible recovery of slightly over $138.57 for each worker, assuming that the Class is that large and there are no opt outs.  Here, the settlement proceeds will be allocated among the various workers so that Class Members will receive appropriate payments based on the alleged harm they suffered.  For instance, if a Class Member worked for both TCFFC and ABCSL they will receive a credit for having worked for each.  The parties have agreed to terms for notice to the class and collective action members, as well as notice to government entities under 28 U.S.C. § 1715; a PAGA payment that is $100,000); payment of fees to counsel in an amount not to exceed $1,600,000; reimbursement of counsel's costs in an amount not to exceed $35,000; payment of enhancement awards to the class representatives, not to exceed $5,000 each to Mann and Rojas (collectively, "Plaintiffs")[3]; and settlement administration fees, capped at $145,000.

        By way of this Motion, Plaintiffs seek an order for: (1) preliminary approval of the proposed settlement, including terms establishing a procedure for class members to submit claims, and/or consent to participate in the collective action proceeds, as well as to object or opt-out; (2) preliminary certification of the proposed class and subclasses for settlement purposes only; (3) preliminary certification of an FLSA collective action for

---

[3] The $5,000 "enhancement award" includes a payment of $5,000 to each of two Plaintiffs, totaling $10,000 on account of their services as a Class Representative, as well as consideration for the execution by each of a general release of claims, including those for violation of Code §§226(b) and 1198.5, claims which each asserted in their Complaints, but on an individual basis only.  Settlement ¶ 15. (e).

purposes of notice; (4) approval of the form and method of providing class-wide notice; (5) appointment of Harris & Ruble as counsel for the settlement class and collective ("class counsel"); (6) preliminary appointment of the class representatives and approval of incentive and/or enhancement awards for them; and (7) preliminary approval of an application for attorneys' fees and costs.

The Settlement Agreement was fully executed on September 26, 2023. The proposed Notice is attached to the Settlement Agreement, and the Opt Out Form and Objection forms are attached as Exhibit 2 to the Harris Declaration, filed herewith. Unless otherwise noted, capitalized terms herein have the meanings set forth in the Settlement.

The undersigned has negotiated and secured this Settlement in light of the requirements of Rule 23 of the Federal Rules of Civil Procedure and relevant federal case law, from <u>Anderson v. Mt. Clemens Pottery Co.</u>, 328 U.S. 680, 687-88 (1946), to date, as well as the California Supreme Court direction that "statutes governing conditions of employment are to be construed broadly in favor of protecting employees."[4]

The Motion will be made and based upon this Notice of Motion; the Memorandum of Points and Authorities appended hereto; the Declarations filed herewith; all of the pleadings, papers, and documents contained in the file of the within actions; and such further evidence and argument as may be presented at or before the hearing on the Motion.  This Motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on June 1, 2023, and on subsequent dates thereafter.

Dated:  September 29, 2023                    HARRIS & RUBLE

Alan Harris

Alan Harris

---

[4] California has long had a strong public policy favoring the prompt payment of wages. The purpose of sections 203, 226, 510 and 1194 of the Labor Code is to put teeth into that policy. <u>Smith v. Rae-Venter Law Group</u>, 29 Cal. 4th 345, 389 (2002).

# **TABLE OF CONTENTS**

I.    INTRODUCTION .............................................................................1

II.    PROCEDURAL HISTORY AND SUMMARY OF SETTLEMENT..........2

    A.    Procedural History.................................................................2

    B.    Settlement Terms..................................................................3

III.    CONDITIONAL CERTIFICATION IS APPROPRIATE............................7

    A.    Class Certification Is Warranted .........................................8

    B.    The Settlement Meets The Requirements For Preliminary
        Approval ................................................................................16

    C.    Plaintiffs Satisfy The FLSA Collective Action Certification
        Standard................................................................................22

    D.    Notice ....................................................................................22

IV.    CONCLUSION................................................................................23

# TABLE OF AUTHORITIES

**Cases**

Abdullah v. U.S. Sec. Associates, Inc.,
    731 F.3d 952 (9th Cir. 2013) .................................................. 9-10

Allen v. Bedolla,
    787 F.3d 1218 (9th Cir. 2015) ........................................... 7, 20, 21

Amchem Prods., Inc. v. Windsor,
    521 U.S. 591 (1997) ........................................................... 8, 13

Amgen Inc. v. Connecticut Ret. Plans & Trust Funds,
    568 U.S. 455 (2013) ............................................................. 13

Anderson v. Mt. Clemens Pottery Co.,
    328 U.S. 680 (1946) ............................................................. iv

Armstrong v. Davis,
    275 F.3d 849 (9th Cir. 2001) .................................................. 10

Arnold v. United Artists Theatre Circuit, Inc.,
    158 F.R.D. 439 (N.D. Cal. 1994) .............................................. 11

Beaver v. Tarsadia Hotels, No. 11-cv-01842-GPC-KSC,
    2017 WL 4310707 (S.D. Cal. Sept. 28, 2017) ............................. 6-7

Bedolla v. Allen,
    736 Fed. Appx. 614 (9th Cir. 2018) .......................................... 21

Bellinghausen v. Tractor Supply Co.,
    306 F.R.D. 245 (N.D. Cal. 2015) ............................................. 20

Brinker Rest. Corp. v. Superior Court,
    53 Cal. 4th 1004 (2012) ....................................................... 19

Cal. Rural Legal Assistance v. Legal Servs. Corp.,
    917 F.2d 1171 (9th Cir. 1990) ............................................ 11, 12

Daar v. Yellow Cab Co.,
    67 Cal.2d 695 (1967) .......................................................... 15

Diesel" Mktg., Sales Practices & Prods. Liab. Litig.,
    2017 WL 672727 (N.D. Cal. Feb. 16, 2017) .................................. 8

Dunleavy v. Nadler,
  213 F.3d 454 (9th Cir. 2000) ............................................................. 8, 17, 21

Ellis v. Costco Wholesale Corp.,
  657 F.3d 970 (9th Cir. 2011) ................................................................. 15

Espinosa v. Ahearn
  (In re Hyundai & Kia Fuel Econ. Litig.), 926 F.3d 539 (9th Cir. 2019) (en banc) ....... 9

Gen. Tel. Co. of the Southwest v. Falcon,
  457 U.S. 147 (1982) ...................................................................... 11, 12

Gentry v. Superior Court,
  42 Cal.4th 443 (2007) ......................................................................... 14

Hanlon v. Chrysler Corp.,
  150 F.3d 1011 (9th Cir. 1998) ................................................ 7, 8, 10, 11, 13

Hartman v. Duffey,
  19 F.3d 1459 (D.C. Cir. 1994) ................................................................ 11

In re Bluetooth Headset Prods. Liability Litig.,
  654 F.3d 935 (9th Cir. 2011) ................................................................. 7

In re Cooper Companies Inc. Sec. Litig.,
  254 F.R.D. 628 (C.D. Cal. 2009) ............................................................. 10

In re High-Tech Emp. Antitrust Litig.,
  2013 WL 6328811 (N.D. Cal. Oct. 30, 2013) ............................................. 16-17

in Rodriguez v. West Publ'g Corp.
  Rodriguez v. West Publ'g Corp., 563 F.3d 948 (9th Cir. 2009) .......................... 5, 6

Mazur v. eBay Inc.,
  257 F.R.D. 563 (N.D. Cal. 2009) .............................................................. 9

Jiangchen v. Rentech, Inc.,
  No. CV-17-1490-GW(FFMx)) 2019 U.S. Dist. LEXIS 180474 ................................... 17

Johnson v. Quantum Learning Network, Inc.,
  2016 WL 4529607 (N.D. Cal. Aug. 30, 2016) ................................................. 17

Khanna v. Inter-Con Sec. Sys., Inc.,
  2012 WL 4465558 at *9 (E.D. Cal. Sept. 25, 2012) ......................................... 22

Labbate-D'Alauro v. GC Servs. Ltd. P'ship,
  168 F.R.D. 451 (E.D.N.Y. 1996) ............................................................. 8-9

Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,
    244 F.3d 1152 (9th Cir. 2001) ........................................................ 15-16, 16

Lusby v. Gamestop Inc.,
    297 F.R.D. 400 (N.D. Cal. 2013) ........................................................ 17

Mazza v. Am. Honda Motor Co.,
    666 F.3d 581 (9th Cir. 2012) ........................................................ 10

McClellan Realty Co. v. U.S.
    483 U.S. 1005 (1987) ........................................................ 16

McGrath v. Wyndham Resort Dev. Corp.,
    No. 15cv1631 JM (KSC), 2018 WL 637858 ........................................................ 7

Miller v. CEVA Logistics USA,
    2015 WL 729638 (E.D. Cal, Feb. 19, 2015) ........................................................ 5

Mitchell v. Acosta Sales, LLC,
    841 F. Supp. 2d 1105 (C.D. Cal. 2011) ........................................................ 22

Naranjo v. Spectrum Sec. Servs., Inc.,
    13 Cal. 5th 93 (2022) ........................................................ 11

Nat'l Rural Telcomms. Coop. v. DIRECTV, Inc.,
    221 F.R.D. 523 (C.D. Cal. 2004) ........................................................ 18-19

Officers for Justice v. Civil Serv. Comm.,
    688 F.2d 615–25 (9th Cir. 1982) ........................................................ 8

Ordonez v. Radio Shack, Inc.,
    2013 WL 210223 at *7 (C.D. Cal. filed Jan. 17, 2013) ........................................................ 19

Pedroza v. PetSmart, Inc.,
    No. ED-CV-11–00298 GHK (DTBx), 2012 WL 9506073 ........................................................ 20

Rannis v. Recchia,
    380 Fed. Appx. 646 (9th Cir. 2010) ........................................................ 9

Richardson v. Interstate Hotels & Resorts, Inc.
    2019 WL 803746 at *3 (N.D. Cal. Feb 21, 2019) ........................................................ 5

Rodriguez v. Hayes,
    591 F.3d 1105 (9th Cir. 2010) ........................................................ 15

Rodriguez v. West Publ'g Corp.,
    2007 WL 2827379 at *8 (C.D. Cal. filed Sept. 10, 2007) ........................................................ 19, 21-22

PLS.' NOT. OF MOT. AND MOT. FOR PRELIMINARY APPROVAL; MEM. OF P. & A. IN SUPP. THEREOF

Sibert v. TV Magic, Inc.,
  2012 U.S. Dist. LEXIS 118245 (C.D. Cal. filed Aug. 21, 2012) ................................. 9

Smith v. Rae-Venter Law Group,
  29 Cal. 4th 345 (2002) ................................................................................. iv

Spann v. J.C. Penney Corp.,
  211 F. Supp. 3d 1244 (C.D. Cal. 2016) ......................................................... 7

Staton v. Boeing Co.,
  327 F.3d 938 (9th Cir. 2003) ................................................................. 8, 11

Stetson v. Grissom,
  821 F.3d 1157 (9th Cir. 2016) ..................................................................... 7

Taylor v. Union Carbide Corp.,
  93 F.R.D. 1 (S.D. W. Va. 1980) ................................................................ 11

U.S. v. Gleneagles Inv. Co., Inc.,
  584 F. Supp. 671 (M.D. Pa. 1984) ............................................................ 16

U.S. v. Tabor Ct. Realty Corp.,
  803 F.2d 1288 (3d Cir. 1986) ................................................................... 16

Viking River Cruises, Inc. v. Moriana,
  142 S. Ct. 1906 (2022) ....................................................................... 19-20

Wal-Mart Stores, Inc. v. Dukes,
  131 S. Ct. 2541 (2011) ................................................................ 7, 10, 19-20

Wehner v. Syntex Corp.,
  117 F.R.D. 641 (N.D. Cal. 1987) .............................................................. 12

Wofford v. Safeway Stores, Inc.,
  78 F.R.D. 460 (N.D. Cal. 1978) .......................................................... 11-12

Yokoyama v. Midland Nat'l Life Ins. Co.,
  594 F.3d 1087 (9th Cir. 2010) .................................................................. 14

PLS.' NOT. OF MOT. AND MOT. FOR PRELIMINARY APPROVAL; MEM. OF P. & A. IN SUPP. THEREOF

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The Plaintiffs William Mann and Alex Rojas and Defendants ABC Signature, LLC ("ABCSL") and Twentieth Century Fox Film Corporation ("TCFFC") have reached a settlement of the collective action, class-wide and representative claims alleged in this case.[5]  This non-reversionary settlement requires that Defendants pay a total of $4,800,000.  Settlement ¶ 15 (a).  Defendants will also make additional payments, outside of and in addition to the gross settlement fund, for the employer's portion of payroll taxes.  Id. ¶ 15(c).  No claim process is required.  The approximate gross recovery for each of the Class Members, assuming no opt-outs, is approximately $138.57 dollars (=$4,800,000 [Total Settlement Value]/34,640 [number of workers]).  The Settlement also provides that $100,000 shall be allocated for payment of PAGA civil penalties, 75% of which shall be paid to the Labor & Workforce Development Agency ("LWDA") and 25% of which shall be allocated to Aggrieved Employees, with every Aggrieved Employee, even those who might opt out of the settlement of the class and collective action claims, receiving a payment of at least $1.00.  Id. ¶ 15(d).  This Settlement has an appropriately crafted, narrow release.  Assuming all requested payments are approved by the Court, the Net Settlement Proceeds distributable to the settlement class and collective members and the alleged aggrieved employees under PAGA is an estimated $2,910,000.[6]  As detailed below, and in the Jon Katzman ("Katzman")[7] and Alan Harris ("Harris") Declarations filed herewith, along with Plaintiffs' Declarations, the Settlement and this

---

[5] Unless otherwise noted, capitalized terms herein have the meanings set forth in the Stipulation of Settlement and Release (the "Settlement").  The Settlement is Exhibit 1 to the September 29, 2023, Declaration of Alan Harris (the "Harris Decl.," filed herewith).  The Harris Declaration includes extensive analysis of the relationship between the total potential recovery in this case and the amounts offered in the Settlement.

[6] The estimated settlement administration cost is $145,000 with proposed Settlement Administrator, CPT Group, Inc.  The Settlement provides that $100,000 will be paid on account of the PAGA claim. Plaintiffs may apply to the Court for an award of attorneys' fees of up to 33.3% of the Settlement Amount ($1,600,000) and costs not to exceed $35,000. Plaintiffs will also apply to the Court for enhancement awards of $5,000 per Plaintiff totaling $10,000 for the two proposed Class Representatives.

[7] Mr. Katzman is a consulting expert for Plaintiffs. He has long worked as an executive in the motion picture industry and has capped his career with lengthy teaching experience.

litigation provide substantial relief to Class Members.  Under those circumstances, the projected net recovery should average at least $88.18 (=$2,910,000 [Net Settlement Proceeds] / 33,000 [Projected Class Size]).

Further, Plaintiffs contend that as a result of this lawsuit, both TCFFC and ABCSL now reimburse crew with daily $3.00 payments on account of routine business use by crew of their personal cell phones.  Harris Decl. ¶ 17.  In addition, Defendants' wage and hour training and reminders to their staff and management employees in California have resulted in an apparent decrease of tardy payment of wages to crew.  The Defendants stress the importance of taking uninterrupted meal and rest breaks, and timely payment of wages for all hours worked.  Harris Decl. ¶ 20.  Plaintiffs now respectfully move for preliminary approval of the Settlement and conditional certification of the Settlement Class and related collective action.

## II.    PROCEDURAL HISTORY AND SUMMARY OF SETTLEMENT

### A. Procedural History

This is a PAGA law enforcement action, class action and FLSA collective action, seeking unpaid wages, damages, penalties, civil penalties and attorneys' fees and costs, against TCFFC and ABCSL.[8]  Plaintiffs' Second Amended Complaint ("SAC") [ECF Doc. 32] was filed after the Court's June 1, 2023, ruling that Rojas be related to Mann. The SAC alleges the following claims against Defendants:  violation of the Fair Labor Standards Act (the "FLSA"), the California Business & Professions Code, and the following provisions of the California Labor Code (the "Code"):  (1) §§ 201.3, 201.5, and 203 Continuing Wages; (2) § 226(a), Failure to Provide Compliant Wage Statements; (3) §§ 226.7, 512 and Wage Order No. 12, Failure to Provide Meal Breaks; § 226.7 and Wage Order No. 12, Failure to Provide Rest Breaks; (4) § 510, 515, and 1194 Failure to Provide Pay Proper Overtime; (5) §§ 1194 and 1198 Failure to Provide Pay Proper Minimum Wages; (6) Code § 2802, Failure to Reimburse Business Expenses, including

---

[8] On January 5, 2022, Rojas provided statutory notice to the LWDA and to Defendant TCFFC of the claims set forth in his Complaint.

cell phone expenses; and (7) §§ 2698, *et seq.,* Civil Penalties under PAGA.

On June 1, 2023, the Parties attended a private mediation with experienced class action Mediator Lynn Frank.[9]  Harris Decl. ¶ 12.  The Parties accepted a Mediator's Proposal resulting in the execution of a Memorandum of Agreement.  Id.  After mediation, the parties memorialized their compromise in the present, Settlement Agreement.  Harris Decl., Ex. 1.

The parties have engaged in significant investigation of the facts at issue, and have exchanged extensive documents and data, all of which allowed the Parties to fully assess the value of the claims involved.  This Agreement comes after nearly three years of litigation and intense settlement negotiations, including a full day of mediation and many subsequent conference calls and follow up conferences.  Harris Decl., ¶ 13.

**B. Settlement Terms**

**1. The Gross Settlement Amount and Net Settlement Proceeds**

Plaintiffs and their counsel have concluded that the $4,800,000 Settlement is fair, reasonable, and in the best interests of the Settlement Class and respectfully request that the Settlement be approved.  The settlement amount is non-reversionary, and not claims made.  Subject to this Court's approval, the Gross Settlement Amount will be used to pay: (a) the PAGA civil penalties,[10] (2) the costs of delivering the Class Notice to the Settlement Class and administering the distribution of funds, (3) Class Counsels' attorney's fees and costs, and (4) Enhancement Awards to Plaintiffs.  The remainder of funds after accounting for the above payments will constitute the Net Settlement Proceeds (the "NSP").

The NSP will be distributed to Settlement Class members who do not "opt out" of the settlement.  Settlement ¶ 15 (b).  Taking into account the requested enhancement

---

[9] "Ms. Frank has specialized exclusively in the mediation of complex disputes since 1987. She has successfully mediated over one thousand matters covering . . . employment . . . wage and hour class action . . . and entertainment [industry matters]. Ms. Frank currently serves as an Appellate Mediator for the First District Court of Appeals in California." https://frankandfeder.com/lynn-frank/ (last accessed September 29, 2023).

[10] Under the PAGA, 75% of the $100,000 PAGA allocation shall be paid to the LWDA, with the remaining 25% to be distributed to the Aggrieved Employees.

awards to Plaintiffs (up to $5,000 for each of Mann and Rojas, a total of $10,000), the maximum amount of attorney's fees and costs permitted to be awarded under the Settlement ($1,600.000 and $35,000), and the estimated costs of settlement administration ($145,000), the NSP is estimated to be, at minimum, $2,910,000 (=$4,800,000 Gross Settlement Value - $10,000 enhancement awards - $1,600,000 attorney's fees - $35,000 attorney's costs – $145,000 settlement administration costs). The PAGA allocation of $100,000 is over 3.4% of the NSP.

### 2. The Allocation of Funds

The Net Settlement Proceeds is allocated among the Class Members so that they will receive payments related to the alleged harms they suffered based on Total Class Pay Periods Worked.  So if a Class Member worked for each Defendant, they will be entitled to receive a payment relating to each effort. The Net Settlement Proceeds will be distributed to each Class Member under the following rubric:

(i)        "Total Class Pay Periods Worked" will be the total number of pay periods during which Class Members worked for any of the Defendants on at least one workday, during the Class Period and received a wage statement, according to the records of Defendants.  "Individual Class Pay Periods Worked" will be the total number of pay periods during which a Class Member worked for any of the Defendants on at least one workday, during the Class Period and received a wage statement, according to the records of Defendants; and

(ii)        "The Individual Settlement Payment" will be based on a ratio of the Total Class Pay Periods Worked to the Individual Class Pay Periods Worked, calculated by dividing the Individual Class Pay Periods Worked of a Class Member by the Total Class Pay Periods Worked of all Class Members during the Class Period and multiplying this result by the Net Settlement Proceeds.  However, the distribution formula may be

1    modified so that no participating Class Member receives a payment of less

2    than $10.

3    Settlement ¶ 15(b).  Based on careful review by Class Counsel and Plaintiffs, including

4    an analysis of the unpaid wages, damages, penalties and civil penalties at issue in this

5    case, all have concluded that the settlement is fair to the Class. (Harris Decl., ¶ 19; Mann

6    Decl., ¶ 7; Rojas Decl. ¶ 7.)

7          The Settlement is sufficient to provide Plaintiffs and Class Members a reasonable

8    recovery for their lost wages and Defendants' tardy implementation of a routine

9    procedure for reimbursement of cell phone expenses.  In a case seeking recovery of

10   unpaid wages and Defendants' failure to reimburse necessary employee expenses, it is

11   appropriate to substantially discount penalties and civil penalties, or to entirely exclude

12   them from the analysis, as in Rodriguez v. West Publ'g Corp., 563 F.3d 948, 964 (9th

13   Cir. 2009)[12].

14          ### 3.  Settlement Administration

15          Plaintiffs sought bids for settlement administration from qualified companies and

16   request that the Court appoint CPT Group, Inc. to act as the settlement administrator to

17   perform notification services and settlement administration pursuant to the terms of the

18   Settlement.  Harris Decl., ¶ 28.  The deadline for claims, objections, and opt-outs will be

19   forty five (45) days after class notice is sent, a notice designed to provide the best notice

20   practicable.  Settlement ¶ 25.  If five percent (5%) or more of the Class Members submit

21   a timely request for exclusion, or if a number of Class Members whose share of the Net

22   Settlement Proceeds represents five percent (5%) or more of the Net Settlement Proceeds

23   validly elect not to participate in the Settlement, Defendant, in its sole election, has the

24   right to void this agreement and all rights and obligations contained therein.  Id. ¶ 27.  In

25   such case the Parties shall return to their respective previous positions prior to entry of

26

27          [12] See Miller v. CEVA Logistics USA, 2015 WL 729638, at *7 (E.D. Cal, Feb. 19, 2015) (evaluating fairness of wage and hour class action by comparison to potential exposure exclusive of penalties); Richardson v. Interstate Hotels & Resorts, Inc. 2019 WL 803746 at *3 (N.D. Cal. Feb 21, 2019) (the court evaluated the settlement amount exclusive of penalties).

28

PLS.' NOT. OF MOT. AND MOT. FOR PRELIMINARY APPROVAL; MEM. OF P. & A. IN SUPP. THEREOF

this Agreement and Defendant agrees to bear all settlement administration costs incurred up to the date of nullification.  <u>Id.</u>

### 4.  Enhancement Awards and Reimbursement Fees and Costs

Plaintiffs will petition the court for class representative enhancement awards (not to exceed $5,000 each).  According to the Ninth Circuit, "[i]ncentive awards are fairly typical in class action cases" and "are intended to compensate class representatives for work done on behalf of [a] class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  <u>Rodriguez v. West Publ'g Corp.</u>, 563 F.3d at 958–59 (emphasis removed), <u>vacated on other grounds</u>, 688 F.3d 645, 660 (9th Cir. 2012).  The incentive awards requested here are reasonable in light of the work pursuing this action with counsel.  The declarations of Plaintiffs submitted herewith detail their efforts in connection with this case.

Defendant has also agreed not to oppose Class Counsel's application for an award of attorney's fees and reimbursement of actual litigation expenses.  Pursuant to the terms of the Settlement Agreement, Class Counsel intend to apply for an award of attorney's fees in an amount not to exceed $1,600,000 to Class Counsel, as well as an award of actual costs of no more than $35,000 as awarded by the Court.[13]  Plaintiffs' counsel should be awarded their requested fee.  This litigation and the culminating settlement has resulted in a substantial cash recovery, resolving two cases.  Indeed, since the underlying claims at issue here are largely state-law claims, filed in state court, "California law governs this fee application because where state law claims predominate, state law applies to determine the right to fees and the method of calculating them"—and the federal 25% "benchmark" should not apply here since, "[u]nder the percentage method, California has recognized that most fee awards based on either a lodestar or percentage calculation are 33 percent."  <u>Beaver v. Tarsadia Hotels</u>, No. 11-cv-01842-GPC-KSC,

---

[13] Harris Decl., Ex. 1 at pp. 18-19, ¶¶ 18(a) and (b).

2017 WL 4310707, at *9 (S.D. Cal. Sept. 28, 2017).[14]  A court overseeing a class-wide settlement in federal actions, such as under the FLSA, "has discretion to apply either a lodestar method or the percentage-of-the-fund method in calculating a fee award." Stetson v. Grissom, 821 F.3d 1157, 1165 (9th Cir. 2016) (internal quotation marks omitted).  Regardless, though, of which method is selected, or whether state or federal law applies, courts in the Ninth Circuit should "cross-check[] their calculations against [the non-selected] method" to assure themselves that the calculated fee is reasonable. In re Bluetooth Headset Prods. Liability Litig., 654 F.3d 935, 944 (9th Cir. 2011).  Accordingly, "even though the lodestar method may be a perfectly appropriate method of fee calculation. . . courts [are] to guard against an unreasonable result by cross-checking their calculations against a second method." Id.

In any event, the Settlement Class Members will be given an opportunity to object to Class Counsel's requested attorney's fees, and the Court will have an opportunity to address the fee award after Class Counsel have filed the necessary fee petition.

## III.    CONDITIONAL CERTIFICATION IS APPROPRIATE

Under Ninth Circuit precedent, there is "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." Allen v. Bedolla, 787 F.3d 1218, 1223 (9th Cir. 2015) (internal quotation marks omitted).  Federal Rule of Civil Procedure 23(e) requires district court approval of class action settlements.  "[S]ettlement class actions present unique due process concerns for absent class members." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998) overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338 (2011).  Concerns about

---

[14] See also McGrath v. Wyndham Resort Dev. Corp., No. 15cv1631 JM (KSC), No. 15cv1631 JM (KSC), 2018 WL 637858, at *7–8 (S.D. Cal. Jan. 30, 2018) (explaining that, "[u]nder California law, which applies here, attorneys' fees in class action cases may be calculated in one of two ways:  the percentage method . . . or the lodestar method," and that the typical fee award under California law is "one-third of the common fund"); Spann v. J.C. Penney Corp., 211 F. Supp. 3d 1244, 1262 (C.D. Cal. 2016) (stating that, "[i]n diversity actions such as this one, the Ninth Circuit applies state law to determine the right to fees and the method for calculating them," and that "'[e]mpirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions [subject to California law] average around one-third of the recovery'") (quoting Chavez v. Netflix, Inc., 162 Cal. App. 4th 43, 66 n.11 (2008)).

the rights of absent Settlement Class Members can be dispelled by the Court's review of the Settlement Agreement and by the procedural protections provided by Rule 23. Officers for Justice v. Civil Serv. Comm., 688 F.2d 615, 624–25 (9th Cir. 1982), cert. denied, 459 U.S. 1217 (1983). A trial court has wide discretion in certifying a class for settlement purposes and will be reversed "'only upon a strong showing that [its] decision was a clear abuse of discretion.'" Dunleavy v. Nadler, 213 F.3d 454, 461 (2000) (quoting Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1238 (9th Cir. 1998)). In instances where parties arrive at a settlement before class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).

Preliminary approval of class action settlements involves a two-step inquiry. In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prods. Liab. Litig., 2017 WL 672727, at *12 (N.D. Cal. Feb. 16, 2017). In the first step, courts decide if a class exists. Staton, 327 F.3d at 952. "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997). In the second step, courts consider "whether a proposed settlement is fundamentally fair, adequate, and reasonable." Hanlon, 150 F.3d at 1026. If the parties settle before class certification, the Ninth Circuit requires "a more probing inquiry than may normally be required under Rule 23(e)." Id. During the preliminary approval stage, courts "determine whether the settlement falls 'within the range of possible approval.'" Booth v. Strategic Realty Tr., Inc., 2015 WL 3957746, at *6 *N.D. Cal. Jun. 28, 2015) quoting In re Tableware Antitrust Litig., 484 F.Supp.2d 1078 (N.D. Cal. 2007)). Courts examine "the settlement taken as a whole, rather than the individual component parts. . . for overall fairness." Hanlon, 150 F.3d at 1026.

## A. Class Certification Is Warranted

Class actions are favored, and Rule 23 is to be given a broad interpretation in favor of maintaining class actions. Labbate-D'Alauro v. GC Servs. Ltd. P'ship, 168 F.R.D.

451, 454 (E.D.N.Y. 1996).  Rule 23 requires the party seeking certification to satisfy all four requirements of Rule 23(a)[15] and at least one of the subparagraphs of Rule 23(b). Here, Plaintiff seeks certification under Rule 23(b)(3). As explained in Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.), 926 F.3d 539 (9th Cir. 2019) (*en banc*):

> The criteria for class certification are applied differently in litigation classes and settlement classes.  In deciding whether to certify a litigation class, a district court must be concerned with manageability at trial.  However, such manageability is not a concern in certifying a settlement class where, by definition, there will be no trial.

In re Hyundai, 926 F.3d at 556-57.

### 1.  Numerosity

Here, the numerosity requirement is met.  Again, there are a maximum of 34,640 Settlement Class Members and 33,000 anticipated at the time of Preliminary Approval, which is the cut off date for Class Members.[16]  Given that "courts will typically find the numerosity requirement satisfied when a class includes 40 or more members," Sibert v. TV Magic, Inc., 2012 U.S. Dist. LEXIS 118245 (C.D. Cal. filed Aug. 21, 2012) (citing Rannis v. Recchia, 380 Fed. Appx. 646, 651 (9th Cir. 2010), and given that common sense indicates that joinder of all Class Members would be "impracticable," the Class is sufficiently numerous to justify certification.

### 2.  Commonality

"[C]ommonality requires that the class members' claims 'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke.'"  Abdullah v. U.S. Sec. Associates,

---

[15] Rule 23(a) contains the following certification requirements:

[16] "As a threshold matter, and apart from the explicit requirements of Rule 23(a), the party seeking class certification must demonstrate that an identifiable and ascertainable class exists." Mazur v. eBay Inc., 257 F.R.D. 563, 567 (N.D. Cal. 2009). "A class definition should be precise, objective and presently ascertainable." Id. (citing Rodriguez v. Gates, 2002 WL 1162675, *8 (C.D. Cal. 2002).  Here, Defendants' agents (payroll vendors) maintain records identifying each of the class members.

Inc., 731 F.3d 952, 957 (9th Cir. 2013) cert. denied, 574 U.S. 815 (2014).  "This does not, however, mean that *every* question of law or fact must be common to the class; all that Rule 23(a)(2) requires is "a single *significant* question of law or fact." Id.  Rule 23(a)(2), in other words, is construed "permissively," with the analysis thereunder proceeding far less rigorously than that under Rule 23(b)(3), discussed infra Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).  Compare Fed. R. Civ. Proc. 23(b)(3) (requiring that common questions of law or fact "predominate" in class actions maintained under this subsection) with Fed. R. Civ. Proc. 23(a)(2) (not including "predominate" or similar language in describing the general commonality requirement).  Accordingly, it is sufficient for class members to share legal issues but divergent facts or, similarly, to share a common core of facts but to base their claims for relief on different legal theories. Hanlon, 150 F.3d at 1019. In re Cooper Companies Inc. Sec. Litig., 254 F.R.D. 628, 634 (C.D. Cal. 2009) ("[A] few factual variations among the class grievances will not defeat commonality so long as class members' claims arise from 'shared legal issues' or 'a common core of salient facts'") (quoting Staton v. Boeing Co., 327 F.3d 938, 953 (9th Cir. 2003)).  In point of fact, the Ninth Circuit considers the requirements for finding commonality under Rule 23(a)(2) to be "minimal," Id. at l020, and for the party to have only "a single *significant* question of law or fact." Mazza v. Am. Honda Motor Co., 666 F.3d 581, 589 (9th Cir. 2012).  See also Wal-Mart Stores, Inc., 564 U.S. 338, 359 ("We quite agree that for purposes of Rule 23(a)(2) "'even a single [common] question"' will do.") (brackets in original).

Commonality is readily satisfied where a "lawsuit challenges a system-wide practice or policy that affects all putative class members."  Armstrong v. Davis, 275 F.3d 849, 868 (9th Cir. 2001) abrogated on other grounds by Johnson v. California, 543 U.S. 499, 504-05 (2005).  Such system-wide policies and practices are present in this action for the Settlement Class, including: (i) whether Defendants' practice of routinely issuing tardy payment of final wages warrants imposition of penalties and civil penalties; (ii) whether Defendants' systematic rounding of the start and end of meal breaks was legal;

(iii) whether Defendants' wage statements complied with Labor Code section 226; and (iv) whether Defendant failed to provide proper compensation to Class Members who were allegedly required to have cell phones and/or walkie-talkies operating at all times, failing to either reimburse them for the costs of maintaining their cell phones or to pay them premium wages for failure to provide duty-free rest breaks and meal periods, as required by <u>Augustus v. ABM Sec. Servs. Inc.</u>, 2 Cal. 5th (2016) and <u>Naranjo v. Spectrum Sec. Servs., Inc.</u>, 13 Cal. 5th 93, 106-07, 111 (2022).  Whether these common matters violate the law can be determined in a single action for all employees.

### 3. Typicality

Rule 23(a)(3) requires that "the claims . . . of the representative part[y be] typical of the claims . . . of the class." Fed. R. Civ. Proc. 23(a)(3).  The Ninth Circuit also interprets this requirement permissively.  <u>Hanlon</u>, 150 F.3d at 1020.  Typicality requires that the named plaintiffs be members of the classes that he or she seek to represent and that he or she "possess the same interest and suffer the same injury" as class members. <u>Gen. Tel. Co. of the Southwest v. Falcon</u>, 457 U.S. 147, 156 (1982).  The named plaintiff's claims need not be identical to the claims of the class; instead, the claims need only "reasonably co-extensive with those of absent class members."  <u>Hanlon</u>, 150 F.3d at 1020.  It is sufficient for the plaintiff's claims to "arise from the same remedial and legal theories" as the class's claims.  <u>Arnold v. United Artists Theatre Circuit, Inc.</u>, 158 F.R.D. 439, 449 (N.D. Cal. 1994); <u>Cal. Rural Legal Assistance v. Legal Servs. Corp.</u>, 917 F.2d 1171, 1175 (9th Cir. 1990) (explaining that class representatives and members of the class need only "share a common issue of law or fact").  For this reason, Rule 23(a)(3) does not require a class representative for each job category or location that may be included in a class.  <u>Staton</u>, 327 F.3d at 957 (rejecting the defendant's argument that typicality requires plaintiffs to "provide clear documentation that each job category had a class representative"); <u>Taylor v. Union Carbide Corp.</u>, 93 F.R.D. 1, 6 (S.D. W. Va. 1980); <u>Hartman v. Duffey</u>, 19 F.3d 1459, 1471–72 (D.C. Cir. 1994).  Cf. <u>Wofford v. Safeway Stores, Inc.</u>, 78 F.R.D. 460, 488 (N.D. Cal. 1978) ("Factual variations are not fatal to a

proposed class when the claims arise out of the same remedial and legal theory.");
<u>Wehner v. Syntex Corp</u>., 117 F.R.D. 641, 644 (N.D. Cal. 1987) ("Factual differences are acceptable provided the claim arises from the same event or course of conduct and is based on the same legal theory."). All that is required is that the representative —the named plaintiff—be similarly situated so that he or she will have the incentive or motive to litigate on behalf of all class members. Here, Plaintiffs are non-exempt employees who were subject to the same violations as other workers producing motion pictures. Rojas Decl. ¶ 8; Mann Decl. ¶ 8.

Common issues permeate this action. The U.S. Supreme Court has stated that Rule 23(a)(3)'s typicality and commonality requirements "tend to merge," and a finding of commonality ordinarily supports a finding of typicality. <u>Gen. Tel. Co. of the Sw.</u>, 457 U.S. at 157 n.13; <u>Wehner</u>, 117 F.R.D. at 644 (observing a "necessary overlap of the provisions of Rule 23"); <u>Cal. Rural Legal Assistance</u>, 917 F.2d at 1175 ("Fed. R. Civ. P. 23 . . . does not require the named plaintiffs to be identically situated with all other class members. It is enough to share a 'common issue of law or fact.'") (internal citations omitted). Because Plaintiffs possess the same interests, have suffered the same injury, and allege identical violations to other Class Members, typicality exists.

The only claims that the proposed Class Representatives seek to represent are the claims of others who, like them, were subject to the alleged violations in this case. Both of the Plaintiffs suffered each violation. Mann Decl. ¶ 8; Rojas Decl. ¶ 8.)

### 4. Predominance and Superiority

In addition to the above-described four requirements, this case must also meet one of the non-exclusive factors in Rule 23(b). Rule 23(b) authorizes class certification if a court determines that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. Proc. 23(b)(3). The predominance inquiry is whether proposed classes are sufficiently cohesive to warrant adjudication by representation.

1  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  The inquiry "presumes
2  that the existence of common issues of fact or law have been established pursuant to Rule
3  23(a)(2)," and focuses on whether the "common questions present a significant aspect of
4  the case and they can be resolved for all members of the class in a single adjudication."
5  If the question or questions are significant for the proposed class, they predominate and,
6  "there is clear justification for handling the dispute on a representative rather than on an
7  individual basis." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998)
8  overruled on other grounds (quoting 7A Charles Alan Wright et al., Federal Practice &
9  Procedure § 1777 (2d ed. 1986)).  While the commonality inquiry asks whether the class
10 shares issues capable of resolution through common proof, the predominance inquiry
11 asks whether resolving those common issues is apt to drive the case's resolution, or
12 instead, whether individual inquiries are going to overwhelm common questions.  *Amgen*
13 *Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455; 469 (2013).  Here, there is
14 nothing to indicate that individual inquiries could "overwhelm" the common questions
15 which are drivers of each alleged violation.

16     The superiority requirement ensures that classes will only be certified under Rule
17 23(b)(3) if they will "achieve economies of time, effort, and expense, and promote . . .
18 uniformity of decision as to persons similarly situated, without sacrificing procedural
19 fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615 (internal
20 quotations and citation omitted).  With respect to superiority, there can be no question but
21 that resolution of this case will achieve economies of time and assure uniformity of
22 decision.

23     Plaintiffs contend that the core common questions in this case—the lawfulness of
24 Defendants' policies and practices with respect to payment of final wages, provision of
25 meal periods and rest breaks, design of paystubs, and reimbursement of cell phone
26 expenses predominate over any differences with respect to implementation of those
27 policies and practices.  As such, this Court should conclude that common questions of
28 law and fact predominate.  As noted with respect to the commonality requirement, a

central issue in this case is the legality of Defendants' policies.  Notably, individual determinations on damages do not defeat class certification.  <u>See Yokoyama v. Midland Nat'l Life Ins. Co.</u>, 594 F.3d 1087, 1089 (9th Cir. 2010) (stating that "[t]he potential existence of individualized damage assessments, however, does not detract from the action's suitability for class certification," and explaining "that '[t]he amount of damages is invariably an individual question and does not defeat class action treatment'").  For example, Class certification should be granted where there is a dispute with respect to whether Defendants' routine failure to make timely payment of final wages was "willful," the showing required to result in an obligation for the employer to pay "continuing wages" required by Code § 203.  Should certification be granted in an action by employees seeking reimbursement of work-related cell phone expenses because Code § 2802, requires an employer to reimburse an employee for the reasonable expense of the mandatory use of a personal cell phone, regardless of the details of the employee's cell phone plan, whether the phone bill is paid for by a third person or at all, and whether the employee changed plans to accommodate worked-related cell phone usage.  To show liability under § 2802, an employee need only show that he or she was required to use a personal cell phone to make work-related calls, and that he or she was not reimbursed. <u>Cochran v. Schwan's Home Service, Inc.</u>, 228 Cal. App. 4th 1137, 1139 (2014).  There is no issue regarding procedural unfairness, when the alternative to class-wide settlement is the near certainty that the overwhelming majority of the workers will never receive any recovery, at all.

A class action is also superior where individuals may forgo pursuing otherwise-meritorious claims due to the fear of retaliation.  This chilling effect is uniquely present in employment actions.  In <u>Gentry v. Superior Court</u>, 42 Cal.4th 443 (2007), the California Supreme Court recognized that "retaining one's employment while bringing formal legal action against one's employer is not a viable option for many employees." <u>Id.</u>, at 459.  "[F]ederal courts have widely recognized that fear of retaliation for individual suits against an employer is justification for class certification in the arena of

employment litigation, even when it was otherwise questionable that the numerosity requirement of Rule 23 were satisfied." Id., at 460. "[F]ear of economic retaliation might often operate to induce aggrieved employees quietly to accept substandard conditions." Id., at 460. Finally, the wages due to any one employee may well be insufficient to attract counsel who are ready, willing, and able to prosecute individual cases. The blessing of class and collective actions are that they incentivize counsel to litigate such claims that might otherwise be abandoned. This is particularly important in actions to vindicate wage and hour rights. The class procedure may be the only method by which these claims can be resolved. Indeed, in such a case, recovery by any individual is unlikely. "[A]bsent a class suit, defendant will retain the benefits from its alleged wrongs. A procedure that would permit the allegedly injured parties to recover . . . is preferred over the forgoing." Daar v. Yellow Cab Co., 67 Cal.2d 695, 715 (1967).

### 5. Adequacy

Representative parties must also fairly and adequately protect the interests of the class. See Fed. R. Civ. P. 23(a)(4). Generally speaking, "[w]hether the class representative[] satisf[ies] the adequacy requirement depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive." Rodriguez v. Hayes, 591 F.3d 1105, 1125 (9th Cir. 2010) (omitting internal quotation marks) (quoting Walters v. Reno, 145 F.3d 1032, 1046 (9th Cir. 1998) and Crawford v. Honig, 37 F.3d 485, 487 (9th Cir. 1994)); see Ellis v. Costco Wholesale Corp., 657 F.3d 970, 985 (9th Cir. 2011) ("To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'"); see also Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc., 244 F.3d 1152, 1162 (9th Cir. 2001) ("The record indicates clearly that [the class representative] understands his duties and is currently willing and able to perform them.

1    The Rule does not require more.").

2        Plaintiffs are adequate class representatives. The alleged fact-pattern for each of

3    them are similar, if not identical, to the fact-pattern for other Settlement Class Members.

4    Plaintiffs have no conflicts of interest with Settlement Class Members, as they share their

5    desire to be paid in full. Additionally, Plaintiffs are committed to pursuing the claims of

6    the Settlement Class, and their motivation in retaining counsel and pursuing this action

7    has been to seek reimbursement for themselves and Settlement Class Members. Harris

8    Decl., ¶ 29.

9        Counsel have no conflict of interest with Settlement Class Members and have

10   diligently prosecuted this action on behalf of the class. Id. ¶¶ 29-30. Counsel has

11   diligently researched the facts of this case, interviewing numerous current and former

12   defense employees. Harris Decl., ¶¶ 15, 30. Proposed Class Counsel are experienced in

13   both litigation in the entertainment industry and the prosecution of Class Actions and

14   other matters on behalf of the State of California and other public entities. E.g., U.S. v.

15   Gleneagles Inv. Co., Inc., 584 F. Supp. 671, 689 (M.D. Pa. 1984), aff'd. in part and

16   vacated in part, and remanded sub. nom., U.S. v. Tabor Ct. Realty Corp. 803 F.2d 1288

17   (3d Cir. 1986), cert. den. sub. nom., McClellan Realty Co. v. U.S. 483 U.S. 1005 (1987);

18   Tremblay v. Chevron Stations, Inc., N.D. Cal. Case No. CV-07-6009 EDL ($4,500,000

19   settlement of labor-law claims); Doty v. Costco Wholesale Corp., C.D. Cal. Case No. CV

20   05-3241 FMC (JWJx) ($7,500,000 distributed to class members for FLSA and California

21   Labor Code section 203 and 226 violations); Ruacho v. Time Warner Cable Inc., Case

22   No. 2:15-cv-05592-AB-FFM (C.D. Cal. 2015); Schroeder v. Envoy Air, Inc., 2:16-cv-

23   04911-MWF-KS; Artiga et al. v. ABM Industry Groups, LLC, Case No. 2:19-cv-06735-

24   GW-RAO (C.D. Cal. 2019).

25       **B.    The Settlement Meets The Requirements For Preliminary Approval**

26       "[T]he preliminary approval stage [i]s an 'initial evaluation' of the fairness of the

27   proposed settlement made by the court on the basis of written submissions and informal

28   presentation from the settling parties." In re High-Tech Emp. Antitrust Litig., 2013 WL

6328811, at *1 (N.D. Cal. Oct. 30, 2013).  A court need not conduct a complete analysis of the fairness factors at this time because "some of these 'fairness' factors cannot be fully assessed until the Court conducts the final approval hearing[.]"  Lusby v. Gamestop Inc., 297 F.R.D. 400, 412 (N.D. Cal. 2013).  Instead, at this stage, "[p]reliminary approval of a settlement and notice to the class is appropriate if '[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval.'"  Johnson v. Quantum Learning Network, Inc., 2016 WL 4529607, at *1 (N.D. Cal. Aug. 30, 2016) (quoting In re Tableware, 484 F. Supp. 2d at 1079).  The "decision to approve or reject a settlement is committed to the sound discretion of the trial judge[.]" In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000), as amended (June 19, 2000) (internal quotation marks omitted).

A few years ago, Rule 23(e) was amended, effective December 1, 2018 to delineate factors that district courts must consider when evaluating a class settlement:

> **(2) Approval of the Proposal.** If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;
> >
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule

23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  Plaintiffs' counsel carefully considered each factor and believe

the proposed Settlement Agreement conforms with each requirement.

## 1. The Strength of Plaintiffs' Case

Defendants have disputed every aspect of Plaintiffs' case.  Prior to this case being

filed, as early as twenty years ago, in <u>Greenberg v. EP Mgmt. Servs., LP</u>, Los Angeles

Superior Court Case No. BC237787 (filed 2000); <u>Harrington v. Manpay, LLC</u>, Los

Angeles Superior Court Case No. BC312171 (filed 2004), Defendants disputed that their

failure to routinely pay final wages as required was sufficiently "willful" as to justify

imposition of penalties.  They claimed that meal and rest breaks properly provided on a

timely basis. Only months ago did they begin to reimburse crew expense of maintaining

cell phones.  <u>See</u> <u>Bithell v. E.P. Mgmt. Servs., LP</u>, 2007 Westlaw 4216854 (Cal. Ct. App.

2007) (sustaining class settlement of entertainment-industry employees for section 203

and 226 claims against entertainment-industry "payroll companies" and studios)

Finally, Defendants argue that certification is inappropriate in any event.  If

Defendants' arguments against certification prevailed, *none* of the Settlement Class and

Aggrieved Employees might be entitled to *any* damages or penalties.  The Settlement will

provide participating Settlement Class Members with substantial payments of penalties

and wages commensurate with the number and strength of their wage claims. It is

therefore more than reasonable.  This factor thus weighs in favor of approving the

Settlement.  While Plaintiffs believe their cases are factually and legally supported, the

projected individual recoveries are significant in light of the amounts which might be

recovered after years of additional litigation.

## 2. The Likely Duration Of Further Litigation

In most cases, "'unless the settlement is clearly inadequate, its acceptance and

approval are preferable to lengthy and expensive litigation with uncertain results.'"  <u>Nat'l</u>

Rural Telcomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting 4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11:50 (4th ed. 2002)).  The likely duration of further litigation might well be several years. Accordingly, this factor also weighs in favor of approving the settlement.

### 3.  The Risk Of Maintaining Class-Action Status Through Trial

Here, no class has been certified and even after certification might be achieved "there is no guarantee that [a d]efendant w[ill] not move for and obtain decertification of [a c]lass before or during trial."  Rodriguez v. West Publ'g Corp., 2007 WL 2827379 at *8 (C.D. Cal. filed Sept. 10, 2007) (citing In re NASDAQ Market-Makers Antitrust Litig., 187 F.R.D. 465, 476 (S.D.N.Y. 1998)), rev'd on other grounds, 563 F.3d 948 (9th Cir. 2009).  See also Rodriguez, 2007 WL 2827379 at *8 (stating that, "if 'insurmountable management problems were to develop at any point, class certification can be revisited at any time under Fed. R. Civ. P. 23(c)(1)'") (quoting In re NASDAQ Market-Makers Antitrust Litig., 187 F.R.D. at 476).

With respect to meal-break claims in particular, the California Supreme Court has held that "[a]n employer's duty . . . under . . . section 512 . . . is an obligation to provide a meal period," which is satisfied if the employer "relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break."  Brinker Rest. Corp. v. Superior Court, 53 Cal. 4th 1004, 1040 (2012).  This means that an employer is not liable for meal-break violations if the employee voluntarily defers or foregoes a break.  As explained by the Central District of California, there is often "no way of determining on a class wide basis whether [missed breaks] were violations . . . or whether individual class members voluntarily opted to start their meal break late, cut it short, or not take a break at all." Ordonez v. Radio Shack, Inc., 2013 WL 210223 at *7 (C.D. Cal. filed Jan. 17, 2013). Accordingly, there is a risk that fewer than all of Plaintiffs' class claims will be sustained. This factor weighs in favor of approval, particularly in light of the defense argument that a person-by-person determination of the application of their policies requires hundreds of

mini-trials.  See Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2548 (2011).

With respect to Plaintiffs' claim for waiting time penalties, Defendant alleged that its good-faith belief that it paid all wages precluded the imposition of waiting time penalties since Plaintiffs could not prove that Defendants' alleged failure to pay all final wages at the time of separation was "willful."  See, e.g., Pedroza v. PetSmart, Inc., No. ED-CV–11–00298 GHK (DTBx), 2012 WL 9506073, *5 (C.D. Cal. June 14, 2012).

### 4.  The Settlement Amount Offered

The gross settlement amount is $4,800,000.  The settlement is non-reversionary, not claims made, and Defendants will pay an additional amount to fund the employer's share of payroll taxes.  Settlements awarding just over to less than 10% of damages are often approved.

> When considering the fairness and adequacy of the amount offered in settlement, "it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." DIRECTV, 221 F.R.D. at 527 (citation omitted). "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." Id. (collecting cases).

Bellinghausen v. Tractor Supply Co., 306 F.R.D. 245, 256 (N.D. Cal. 2015) (approving settlement estimated to be as low as 9% of the potential liability); Jiangchen v. Rentech, Inc., No. CV-17-1490-GW(FFMx)) 2019 U.S. Dist. LEXIS 180474 (C.D. Cal. Oct. 10, 2019), at *21 (finding 10% recovery of the total maximum damages reasonable in light of the risks of continued litigation).

In Allen v. Bedolla, 787 F.3d 1218 (9th Cir. 2015), the Ninth Circuit reviewed final approval of a settlement in which $373,000 was paid to the class in a settlement involving some 210,000 class members, resolving eleven wage and hour claims, for unpaid minimum wages and overtime, waiting time penalties, deficient wage statements, PAGA and other violations of the Code. The value per class member was less than $2

each and less than 3% of the potential financial exposure sought in the <u>Allen</u> complaint.

In 2015, the Ninth Circuit reviewed the propriety of the district court's approval of the

settlement, remanding for further examination.  <u>Id.</u> at 1220.  The Ninth Circuit ultimately

affirmed the district court's final approval of the settlement.  <u>Bedolla v. Allen</u>, 736 Fed.

Appx. 614, 617-618 (9th Cir. 2018).  With respect to the analysis of total potential

liability in relation to the amount of the proposed settlement. Plaintiffs compute the

defense exposure at under $70,000,000.  Harris Decl. ¶ 17.  This is around 7% of

maximum possible exposure, a realistic result in this case, one riddled with procedural

difficulties in securing class certification and weighty concerns about the viability of all

theories of exposure, particularly in light of longstanding antipathy to workers rights and

the class certification process itself.  <u>See, e.g.,</u>  <u>Viking River Cruises, Inc. v. Moriana</u>,

142 S. Ct. 1906 (2022).  This factor weighs in favor of approving the settlement

### 5.  The Extent Of Discovery And Stage Of The Proceedings

Although the parties have not engaged in formal discovery, Plaintiffs have engaged

in significant investigation into the claims in this case, including dozens of witness

interviews and substantial informal discovery, including production of a large number of

relevant documents and class data provided by Defendants before mediation and during

the settlement negotiation.  Harris Decl., ¶¶ 13-15. The Ninth Circuit has found that, "'in

the context of class action settlements, 'formal discovery is not a necessary ticket to the

bargaining table' where the parties have sufficient information to make an informed

decision about settlement.'"  <u>Dunleavy</u>, 213 F.3d at 459.  In negotiating the Settlement

Agreement, Class Counsel were provided significant informal discovery sufficient to

evaluate the claims.  In addition, Class Counsel undertook their own independent

investigation to inform their negotiating position, including risk re-evaluation in light of

the potentially dispositive defenses noted above.  All told, they had sufficient information

to make an informed decision about settlement.  Harris Decl. ¶¶ 13-15.  This factor thus

weighs in favor of approval.

### 6.  The Experience And Views Of Counsel

As reflected in the Declaration of Alan Harris filed herewith, Plaintiff's Counsel have substantial experience in prosecuting class actions, including wage-and-hour actions.  Harris Decl. ¶¶ 36-39.  Counsel are of the opinion that the Settlement Agreement represents an excellent bargain for the Settlement Class, given the inherent risks, hazards, and expenses of carrying the case through trial.  Harris Decl. ¶¶ 19, 22, 25.  As the Central District has explained, this weighs strongly in favor of approving the settlement.  See Rodriguez, 2007 WL 2827379 at *9 (explaining that "the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties").

### 7.  The Reaction Of Settlement Class Members

The reaction of Settlement Class Members to the Settlement Agreement cannot, of course, be known until preliminary approval is given, Class Notice is delivered, and responses are received.  This factor is therefore neutral at the preliminary-approval stage.

### C.    Plaintiffs Satisfy The FLSA Collective Action Certification Standard

The factual showing for conditional certification of a FLSA collective action is "modest."  Mitchell v. Acosta Sales, LLC, 841 F. Supp. 2d 1105, 1115 (C.D. Cal. 2011).  Significantly, "[b]ecause the standards for certifying an FLSA class and evaluating the fairness of an FLSA settlement are less stringent than those imposed by Rule 23," courts have found "the FLSA requisites satisfied by a showing that Rule 23 requirements have been met."  Khanna v. Inter-Con Sec. Sys., Inc., 2012 WL 4465558 at *9 (E.D. Cal. Sept. 25, 2012).

### D.    Notice

The proposed Notice, to be sent to all by first class mail, with the Settlement Administrator using standard skip-tracing methods to secure updated mailing addresses, will satisfy due process.  The proposed Notice, attached to the Settlement, is likely to reach the great majority of Class Members, individuals who are employed in the entertainment industry in Southern California, an industry in which virtually all workers are fluent in English.  Settlement ¶ 21.

PLS.' NOT. OF MOT. AND MOT. FOR PRELIMINARY APPROVAL; MEM. OF P. & A. IN SUPP. THEREOF

**IV.    CONCLUSION**

The Court should grant conditional certification of the Settlement Class and collective, and preliminarily approve the settlement, authorizing the appointment of a settlement administrator to distribute the proposed Notice to the Settlement Class Members and Aggrieved Employees.

DATED:  September 29, 2023                    HARRIS & RUBLE

_Alan Harris_
_____

Alan Harris
*Attorneys for Plaintiffs*

PLS.' NOT. OF MOT. AND MOT. FOR PRELIMINARY APPROVAL; MEM. OF P. & A. IN SUPP. THEREOF

# PROOF OF SERVICE

I am over the age of eighteen years, and not a party to the within action. My business address is Harris & Ruble, 655 North Central Avenue, 17th Floor, Glendale, California 91203. On September 29, 2023, I served the within documents:

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT OF MOTION**

**DECLARATION OF ALAN HARRIS IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;**

**DECLARATION OF WILLIAM MANN IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;**

**DECLARATION OF ALEX ROJAS IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;**

**DECLARATION OF JON KATZMAN IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;**

**[PROPOSED] ORDER**

Electronic Service: Based on a court order, I cause the above-entitled document(s) to be served through CM/ECF addressed to all parties appearing on the electronic service list for the above-entitled case and on the interested parties in this case:

Stephen L. Berry
Blake Bertagna
PAUL HASTINGS, LLP.
695 Town Center Drive, 17th Floor
Costa Mesa, CA 92626
stephenberry@paulhastings.com
blakebertagna@paulhastings.com

I declare under penalty of perjury that the above is true and correct. Executed on September 29, 2023 at Los Angeles, California.

*/s/ Min Ji Gal* _____
Min Ji Gal

PLS.' NOT. OF MOT. AND MOT. FOR PRELIMINARY APPROVAL; MEM. OF P. & A. IN SUPP. THEREOF