Alan Harris (SBN 146079)
David Garrett (SBN 160274)
Min Ji Gal (SBN 311963)
HARRIS & RUBLE
655 North Central Avenue 17th Floor
Glendale, California 91203
Telephone: 323.962.3777
Facsimile: 323.962.3004
aharris@harrisandruble.com
dgarrett@harrisandruble.com
mgal@harrisandruble.com

Attorneys for Plaintiffs
William Mann and Alex Rojas

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| WILLIAM MANN, ALEX ROJAS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ABC SIGNATURE, LLC, a Delaware Limited Liability Company; TWENTIETH CENTURY FOX FILM CORPORATION, a Delaware Corporation; JAMES M. KAPENSTEIN, an individual,<br><br>Defendants. | Case No. 2:22-cv-06628-SSS-DTBx<br>Assigned to Hon. Sunshine S. Sykes<br><br>(Consolidated with Case No. 2:23-cv-02652-SSS-DTBx)<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS AND INCENTIVE AWARDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:         July 19, 2024<br>Time:         2:00 p.m.<br>Location:    Courtroom 2, Second Floor<br>                  George E. Brown Federal Bld<br>                  3470 Twelfth St<br>                  Riverside, CA 92501<br><br>Action Filed: March 9, 2022<br>Removed:      September 15, 2022 |

**TO EACH PARTY AND TO EACH PARTY'S ATTORNEY OF RECORD:**

**NOTICE IS HEREBY GIVEN** that on on July 19, 2024, at 2:00 p.m., or as soon thereafter as counsel may be heard, in Courtroom 2 of the above-captioned Court located Riverside, California, or on such other date and time as the Court may designate, the Honorable Sunshine S. Sykes presiding, Plaintiffs William Mann and Alex Rojas will move, and hereby do move this Court for entry of an order awarding attorneys' fees of $1,600,000 and reimbursement of costs in the amount of $19,973.78,  for a total of $1,619,973.78.  The requested fee represents a multiplier of 2.94 based on a $543,891 lodestar. The fee request will compensate Plaintiffs' Counsel for the work required to achieve the outstanding settlement in this case.  The fee request includes an additional 25 hours required to bring these matters to closure, through the close of the notice period, final approval, the distribution of settlement proceeds to class members and post-judgment matters.  As explained in the Motion, Class Counsel respectfully request a fee award of one-third of the $4,800,000 common fund. Here, the Settlement represents a gross average recovery of $170.39 for each of the 28,170 Class Members who worked as temporary workers for a day or a few weeks.  They will receive an average net recovery of $104.35.[1] The lowest payment is $10.00 and the highest payment is $1,310,16. The deadline for Class Members to submit an objection or to opt out is May 25, 2024. Plaintiffs also request incentive awards to Plaintiffs William Mann and Alex Rojas in the amount of $5,000 each, totaling $10,000, for Plaintiffs' services in connection with bringing and maintaining this action.

The Motion will be based upon this Notice of Motion, the Declarations of Alan Harris, William Mann and Alex Rojas the Memorandum of Points and Authorities in Support of Motion for an Award of Attorneys' Fees and Reimbursement of Costs, and the complete records and files of this action.[2]

---

[1] The PAGA payment portion is an average of $1.33 for each of the 18,752 Aggrieved Employees and will be paid on top of the Individual Settlement Payment.

[2] The deadline for Class Members to submit an objection or to opt out is May 25, 2024. The present Motion is being filed at this time, shortly after the mailing of the Class

DATED:  April 26, 2024                    HARRIS & RUBLE

*Alan Harris*

Alan Harris
*Attorney for Plaintiffs*

---

Notice, to safeguard the due-process rights of the Settlement Class. See In re Mercury Interactive Corp. Sec. Litig., 618 F.3d 988, 994–95 (9th Cir. 2010) (holding that a district court should set a schedule that provides class members an opportunity to review class counsel's completed fee motion before the objection window expires).

PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS AND INCENT AWARDS

# TABLE OF CONTENTS

I.   Introduction......................................................................................1

II.  Background.......................................................................................4

III. Argument. .......................................................................................4

    A.   A Common-Fund Attorneys' Fee Award Is Appropriate. .................4

    B.   Attorneys' Fees of 33 1/3% of the Settlement is Reasonable .............6

        1.   Requested Fee is Supported by Awards in Similar Cases ........6

        2.   A Fee Award of 33 1/2% of the Settlement Fund is Fair and Reasonable in Light of the Substantial Monetary Benefits Obtained for the Class and Risks Faced by Class Counsel......................................................................10

            a.   The fee request is justified by the positive results achieved. ......................................................10

            b.   The risks associated with this litigation justify the fee request...................................................11

            c.   The skill of class counsel and the quality of their work justifies the fee request. ......................12

            d.   The contingent nature of the fee and financial burden carried by class counsel justifies the fee request...............................................................12

        3.   The Requested Fee Award Fairly Spreads the Litigation Costs Among the Settlement Beneficiaries .............................13

    C.   The "Lodestar" Method..............................................................15

    C.   Lodestar Rates Are Market Rates................................................17

    D.   The Total Hours Expended Were Reasonably Required. ..................19

    E.   The Total Lodestar Dollar Amount..............................................19

    F.   A Multiplier is Appropriate.........................................................19

    G.   The Award Should Include All Reasonably Incurred Costs & Expenses. ................................................................................24

    H.   The Court Should Award Plaintiffs an Incentive Award..................25

IV. Conclusion. ...................................................................................27

# TABLE OF AUTHORITIES

**Federal Court Opinions**

Beaty v. BET Holdings, Inc.,
  222 F.3d 607 (9th Cir. 2000) ........................................................ 20

Betancourt v. Advantage Human Resourcing, Inc.,
  No. 14-CV-01788-JST, 2016 WL 344532 (N.D. Cal. Jan. 28, 2016) ......... 8

Boeing Co. v. Van Gemert,
  444 U.S. 472 (1980) ...................................................................... 4

Bogosian v. Gulf Oil Corp.,
  621 F. Supp. 27 (E.D. Pa. 1985) .................................................... 25

Boyd v. Bank of Am. Corp.,
  No. SACV 13-0561-DOC, 2014 WL 6473804 (C.D. Cal. Nov. 18, 2014) ........... 8, 22

Campbell v. First Investors Corp.,
  2012 WL 5373423 (S.D. Cal. filed Oct. 29, 2012) ............................ 26

Champion Produce, Inc. v. Ruby Robinson Co.,
  342 F.3d 1016 (9th Cir. 2003) ................................................... 3, 5

Cicero v. DirecTV, Inc.,
  2010 U.S. Dist. Lexis 86920 at *17 (C.D. Cal. 2010) ......................... 7

City of Riverside v. Rivera,
  477 U.S. 561 (1986) .................................................................... 20

Dang v. Cross,
  422 F.3d 800 (9th Cir. 2005) ....................................................... 20

Deaver v. Compass Bank, No. 13-CV-00222-JSC,
  2015 WL 8526982 (N.D. Cal. Dec. 11, 2015) ................................... 8

Fernandez v. Victoria Secret Stores, LLC,
  No. CV 06-04149-MMM-SHX, 2008 WL 8150856 (C.D. Cal. July 21, 2008) ........... 8

Fischel v. Equitable Life Assurance Soc'y of U.S.,
  307 F.3d 997 (9th Cir. 2002) ...................................................... 13

Hopkins v. Stryker Sales Corp.,
  No. 11-CV-02786-LHK, 2013 WL 496358 (N.D. Cal. Feb. 6, 2013) ......... 22

In re Activision Sec. Litig.,
  723 F. Supp. ............................................................................... 7

In re Heritage Bond Litig.,
  2005 WL 1594403 at *19 (C.D. Cal. 2005) ...................................... 2

In re HP Laser Printer Litig.,
  2011 U.S. Dist. LEXIS 98759 (C.D. Cal. Aug. 31, 2011) ..................... 18

In re Mercury Interactive Corp. Sec. Litig.,
  618 F.3d 988–95 (9th Cir. 2010) ............................................... ii, 1

In re S. Ohio Corr. Facility,
   175 F.R.D. 270 (S.D. Ohio 1997) ............................................................. 25

In re Schering-Plough Corp. Enhance Sec. Litig.,
   No. 08-397 (DMC) (JAD), 2013 WL 5505744 (D.N.J. Oct. 1, 2013) ....................... 18

In re Wash. Pub. Power Supply Sys. Sec. Litig.,
   19 F.3d 1291 (9th Cir. 1994) ................................................................ 14

Ins. Exch. v. Law Offices of Conrado Joe Sayas, Jr.,
   250 F.3d 1234 (9th Cir. 2001) ............................................................... 5

Jiangchen v. Rentech, Inc.,
   2019 U.S. Dist. LEXIS 200668, 2019 WL 6001562 (C.D. Cal. Nov. 8, 2019) ........ 8-9

Kendall v. Odonate Therapeutics, Inc.,
   2022 U.S. Dist. LEXIS 101021, 2022 WL 1997530 (S.D. Cal. June 6, 2022) ........... 8

Mangold v. Cal. Pub. Util. Comm'n,
   67 F.3d 1470 (9th Cir. 1995) ................................................................ 20

McCown v. City of Fontana,
   565 F.3d 1097 (9th Cir. 2009) .............................................................. 10

Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles,
   2009 U.S. Dist. LEXIS 132269 (C.D. Cal. June 24, 2009) ................................ 18

Muniz v. UPS,
   738 F.3d 214 (9th Cir. 2013) ............................................................. 3, 5

Osegueda v. N. Cal. Inalliance,
   2020 U.S. Dist. LEXIS 128626, 2020 WL 4194055 (E.D. Cal. July 21, 2020) .......... 8

Paul, Johnson, Alston & Hunt v. Graulty,
   886 F. 2d 268 (9th Cir. 1989) .............................................................. 6

Pennsylvania v. Delaware Valley Citizens' Council,
   478 U.S. 546 (1986) ........................................................................ 20

Pierce v. County of Los Angeles,
   2012 U.S. Dist. LEXIS 150492 (C.D. Cal. Mar. 2, 2012) ................................ 18

Quesada v. Thomason,
   850 F.2d 537 (9th Cir. 1988) ............................................................... 20

Rodriguez v. West Publ'g Corp.,
   563 F.3d 948–59 (9th Cir. 2009) .......................................................... 26

Rutti v. Lojack Corp.,
   2012 U.S. Dist. LEXIS 107677 (C.D. Cal. Jul. 31, 2012) ........................... 18, 19

Sheppard v. Consol. Edison Co. of N.Y., Inc.,
   2002 U.S. Dist. LEXIS 16314 at *16 (E.D.N.Y. filed Aug. 1, 2002) ................... 25

Smith v. CRST Van Expedited, Inc.,
   2013 U.S. Dist. LEXIS 6049 (S.D. Cal. filed Jan. 14, 2013) ....................... 26, 27

St. Marie v. Eastern R.R. Ass'n.,
   72 F.R.D. 443 (S.D.N.Y. 1976) ............................................................ 25

Staton v. Boeing Co.,
   327 F.3d 938 (9th Cir. 2003) .............................................................. 4

Stuart v. Radioshack Corp.,
  No. C–07–4499 EMC, 2010 WL 3155645 (N.D. Cal. Aug. 9, 2010) ......................... 8
v. Am. Gen. Annuity Ins. Co.,
  556 F.3d 815 (9th Cir. 2009) ........................................................................... 5
Van Vraken v. Atlantic Richfield Co.,
  901 F. Supp. 294 (N.D. Cal. 1995) ................................................................. 25
Vandervort v. Balboa Capital Corp.,
  8 F. Supp. 3d 1200 (C.D. Cal. 2014) ........................................................... 7, 22
Vasquez v. Coast Valley Roofing, Inc.,
  266 F.R.D. 482 (E.D. Cal. 2010) ............................................................ 7, 8, 26
Vizcaino v. Microsoft Corp.,
  290 F.3d 1043 (2002) .......................................................... 5, 6, 7, 10, 22
Wang v. Chinese Daily News, Inc.,
  231 F.R.D. 602 (C.D. Cal. 2005) ................................................................... 25
Wang v. Chinese Daily News, Inc.,
  2008 U.S. Dist. LEXIS 123824 (C.D. Cal. Oct. 3, 2008) ........................................ 18
Watson v. Tennant Co.,
  2020 U.S. Dist. LEXIS 166823, 2020 WL 5502318 (E.D. Cal. Sep. 11, 2020) ........... 9
Wren v. RGIS Inventory Specialists,
  No. C-06-05778, JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ........................... 8

**State Cases**

Arhntz Contracting Co. v. St. Paul Fire and Marine Ins. Co.,
  47 Cal. App. 4th 464 (1996) ......................................................................... 25
Augustus v. ABM Security Services, Inc.,
  2 Cal. 5th 257 (2016) ................................................................................. 2
Bernardi v. County of Monterey
  167 Cal. App. 4th 1379 (2008) ..................................................................... 23
Bithell v. E.P. Mgmt. Servs.,
  2007 Cal. App. Unpub. LEXIS 9706 ............................................................... 3
Bowman v. City of Berkeley,
  131 Cal. App. 4th 173 (2005) ....................................................................... 20
Bussey v. Affleck,
  225 Cal. App. 3d 1162 (1990) ..................................................................... 25
Cal. Hous. Fin. Agency v. E.R. Fairway Assocs. I,
  37 Cal. App. 4th 1508–15 (1995) ................................................................. 25
Center for Biological Diversity v. County of San Bernardino
  185 Cal. App. 4th 866 (2010) ..................................................................... 23
Chavez v. Netflix, Inc.,
  162 Cal. App. 4th 43 (2008) ........................................................ 9, 15, 21, 22

City of Oakland v. Oakland Raiders,
203 Cal. App. 3d 78 (1988) ....................................................................... 21

Coalition for L.A. County Planning Etc. Interest v. Bd. of Supervisors,
76 Cal. App. 3d 241 (1977) ....................................................................... 24

Consumer Privacy Cases,
175 Cal. App. 4th 545 (2009) ...................................................................... 9

Crab Addison, Inc. v. Superior Court,
169 Cal. App. 4th 958 (2008) ................................................................... 27

Earley v. Superior Court,
79 Cal. App. 4th 1420 (2000) ................................................................... 14

Flannery v. California Highway Patrol,
61 Cal. App. 4th 629 (1998) ..................................................................... 20

Glendora Cmty. Redev. Agency v. Demeter,
155 Cal. App. 3d 465 (1984) ..................................................................... 22

Graciano v. Robinson Ford Sales, Inc.,
144 Cal. App. 4th 140 (2006) ................................................................... 20

Graham v. DaimlerChrysler Corp.,
34 Cal. 4th 553 (2004) .............................................................................. 23

Greene v. Dillingham Construction N.A., Inc.,
101 Cal. App. 4th 418 (2002) ................................................................... 20

Guinn v. Dotson,
23 Cal. App. 4th 262 (1994) ..................................................................... 19

Hayes v. Ward,
3 Cal. App. 4th 618 (1992) ....................................................................... 17

Horsford v. Board of Trustees of California State University,
132 Cal. App. 4th 359 (2005) ................................................................... 20

In re Sutter Health Uninsured Pricing Cases,
171 Cal. App. 4th 495 (2009) ................................................................... 22

Ketchum v. Moses,
24 Cal. 4th 1122 (2001) ....................................... 13, 15-16, 16, 17, 19, 20, 23

Krumme v. Mercury Ins. Co.,
123 Cal. App. 4th 924 (2004) ................................................................... 21

Laffitte v. Robert Half Int'l, Inc.,
1 Cal. 5th 480 (2016) ......................................................................... 4, 5, 20

Lealao v. Beneficial Calif., Inc.,
82 Cal. App. 4th 19 (2000) ................................................................... 10, 14

Mandel v. Lackner,
92 Cal. App. 3d 747 (1979) ....................................................................... 18

Melendres v. City of Los Angeles,
45 Cal. App. 3d 267 (1975) ....................................................................... 14

Nishiki v. Danko Meredith, APC,
25 Cal. App. 5th 883 (2018) ..................................................................... 23

Nw. Energetic Servs., LLC v. Cal. Franchise Tax Bd.,
    159 Cal. App. 4th 841 (2008) ................................................................. 13
Peabody v. Time Warner Cable, Inc.,
    59 Cal. 4th 662 (2014) .......................................................................... 3
PLCM Group, Inc v. Drexler,
    22 Cal. 4th 1084 (2000) ........................................................... 15, 16, 17
Pokorny v. Quixtar, Inc., No. C 07-
    0201 SC, 2013 U ................................................................................. 7
Porras v. Chipotle Services, LLC,
    2022 Cal. LEXIS 6947 (2022) ............................................................... 3
Ramos v. Countrywide Loans,
    82 Cal. App. 4th 615–23 (2000) ........................................................... 17
Sav–On Drug Stores, Inc. v. Superior Court,
    34 Cal.4th 319 (2004) .......................................................................... 24
Serrano III and Press v. Lucky Stores,
    34 Cal. 3d 311 (1983) .................................................................... 16, 20
Serrano v. Priest,
    20 Cal.3d 25 (1977) .......................................... 5, 10, 15, 17, 20, 21, 22, 23
Serrano v. Unruh,
    32 Cal. 3d 621–42 (1982) ........................................................ 16, 17, 19
Stokus v. Marsh,
    217 Cal. App. 3d 647 (1990) ................................................................ 17
Sundance v. Mun. Court for the Los Angeles Judicial Dist.,
    192 Cal. App. 3d 268–75 (1987) .......................................................... 17
Weeks v. Baker & McKenzie,
    63 Cal. App. 4th 1128 (1998) .......................................................... 20, 24
Wershba v. Apple Computer, Inc.,
    91 Cal. App. 4th 224 (2001) ................................................................ 21

PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS AND INCENT AWARDS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    Introduction.

Plaintiffs William Mann and Alex Rojas respectfully request that this Court approve Plaintiffs' Motion for Attorney's Fees, Costs, and Incentive Awards, including a $1,600,000 fee for Class Counsel, amounting to one-third of the $4,800,000 cash component of the class settlement created in this case. Plaintiffs seek an Incentive Award of $5,000 each, totaling $10,000, and reimbursement of Plaintiffs' out-of-pocket costs in the amount of $19,973.78.[3] The requested relief is consistent with recent awards in similar wage and hour class action settlements and fall within the range of reasonableness under the facts and circumstances of this case.

The recovery will result in a gross recovery on average of $170.39 for each of the 28,170 Participating Class Members and a net recovery on average of $104.35 (not including the PAGA payment to Aggrieved Employees). The lowest payment is $10.00 and the highest payment is $1,310,16. Declaration of Emilio Cofinco ('CPT Declaration") ¶ 16. The Class Notice was mailed on April 10, 2024. Id. ¶ 8. The deadline to object or opt out is May 25, 2024. Id. This is an excellent result for a case in which a large portion of the recovery is based on claims for penalties.

The requested amount will compensate fairly Class Counsel for work already performed in the case and an additional, estimated 25 hours for the time required to file a Supplemental Memorandum addressing opt-outs and objections and to otherwise bring this case to closure. April 26, 2024, Declaration of Alan Harris ("AH Decl.") ¶¶ 29-30. Further, Plaintiffs respectfully request that this Court award an Incentive Award of $5,000 to each Plaintiff (the "Incentive Award"), as Plaintiffs' have properly discharged their functions in assisting Class Counsel in securing a positive result for the Class. The Class Representatives each spent considerable time on this case since their work with Class Counsel commenced in 2021. April 24, 2024, Declaration of William Mann

---

[3] The requested amount does not exceed the $35,000 "not to exceed" sum referenced under the Settlement.

1  ("Mann Decl.") ¶¶ 5, 8, and 11; April 24, 2024, Declaration of Alex Rojas ("Rojas

2  Decl.") ¶¶ 5, 8, and 11.

3      Plaintiffs achieved an outstanding result with a Settlement that will pay penalties to

4  participating Class Members on account of alleged Labor Code violations.  The result

5  warrants a reasonable fee.  In re Heritage Bond Litig., 2005 WL 1594403 at *19 (C.D.

6  Cal. 2005) (explaining that, in a class action, "[t]he result achieved is a significant factor

7  to be considered in making a fee award.") (citing Hensley v. Eckerhart, 461 U.S. 424,

8  436 (1983)).  In addition to the immediate financial recovery achieved, Defendants now

9  routinely pay production crew members $3 for each day of work, a tax-free payment to

10  them in recognition of the need for Class Members to use their personal cell phones in

11  discharging their routine work responsibilities.  AH Decl., ¶ 20.  After the California

12  Supreme Court decision in Augustus v. ABM Security Services, Inc., 2 Cal. 5th 257

13  (2016), Harris & Ruble brought class actions against several motion picture producers,

14  seeking to apply the Augustus holding requiring payment of premium wages for missed

15  meal periods and rest breaks to the motion picture industry, as well as to secure

16  reimbursement to workers of their expenses in maintaining cell phones, also required for

17  workers during film shoots.  AH Decl. ¶ 20.  Accordingly, Defendants' compliance with

18  meal period requirements has increased, significantly.  Id.  The net present dollar value of

19  these two reforms will result in millions of dollars in additional revenue for motion

20  picture crew.  Both the immediate cash receipts and these other benefits – payments for

21  cell phone use and missed meal periods -- should be considered by this Court when

22  evaluating the overall result in these cases.

23      The attorney's fee award should be approved under the common fund methodology

24  because it serves to spread the attorneys' fees equally among all the beneficiaries of the

25  fund, mimics the marketplace had the Class Members each individually retained Class

26  Counsel on a contingency basis, and encourages competent counsel to take on complex

27  contingency cases such as this, and to seek an early settlement and avoid unnecessarily

28  prolonging litigation.  The requested fee is appropriate because Class Counsel have (1)

obtained a significant, immediate monetary benefit for the Class (i.e., the $4,800,000 cash settlement fund); (2) secured a new defense practice in paying $3 per day to crew for their cell phone use; (3) achieved more payments of premium wages on account of missed meal periods; (4) worked diligently and efficiently despite considerable risks faced in prosecuting this litigation; and (5) carried the financial burden of representing Plaintiffs and the Class on a contingency basis.

Moreover, as Plaintiffs' FLSA claim was dismissed, Plaintiffs' claims are **wholly** based on state law, and California law governs the award and calculation of attorney's fees.  See Champion Produce, Inc. v. Ruby Robinson Co., 342 F.3d 1016, 1024 (9th Cir. 2003) ("An award of attorneys' fees incurred in a suit based on state substantive law is generally governed by state law.").  "California state law determines the standards and factors to be considered in determining an award of attorney fees []".  Muniz v. UPS, 738 F.3d 214, 218 (9th Cir. 2013).  "[S]tatutes governing conditions of employment are to be construed broadly in favor of protecting employees."  Peabody v. Time Warner Cable, Inc., 59 Cal. 4th 662, 667 (2014). So, too, the California case law and statutes providing for payment of attorneys' fees to counsel who prevail in labor disputes should be construed in a liberal fashion so that high quality counsel will undertake the substantial risks in cases of this nature.[4]

---

[4] Delay and bankruptcy are substantial risks in cases of this nature.  For example, the undersigned commenced a class and PAGA case against Chipotle on March 25, 2015. Turley v. Chipotle Services, LLC, No. CGC-15-544936, San Francisco Superior Court. Approval of the settlement is pending in the California Supreme Court.  Porras v. Chipotle Services, LLC, 2022 Cal. LEXIS 6947, *1 (2022) ("The petition for review is granted. Further action in this matter is deferred pending consideration and disposition of a related issue in Turrieta v. Lyft, Inc., S271721 (see Cal. Rules of Court, rule 8.512(d)(2)), or pending further order of the court.")
On October 2, 2000, the undersigned filed Greenberg v. EP Management Services LP, No. BC237787, Los Angeles Superior Court, a California Labor Code class action case in which both ABC and Twentieth Century Fox were ultimately released as part of a global settlement.  After Final Approval was granted, a crewmember appealed, adding over two years to the process.  The Objector's claim that Class Counsel "had over-inflated dollar

A detailed statement of all the services provided in connection with this application for a fee award is set forth in the April 26, 2024, Harris Declaration filed herewith.  Day-by-day specifics of the attorneys' work are set forth in **Exhibit 2** to the Harris Declaration.

## II.    Background

The relevant background facts are provided in the concurrently filed Motion for Final Approval.

## III.    Argument.

### A.    A Common-Fund Attorneys' Fee Award Is Appropriate.

Here, Class Counsel has secured a common fund of $4,800,000 in cash for Plaintiffs and the Class.  "[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to reasonable attorneys' fees from the fund as a whole."  Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980); Staton v. Boeing Co., 327 F.3d 938, 969 (9th Cir. 2003).  The California Supreme Court has clarified its stance on common fund cases, ruling:

> We join the overwhelming majority of federal and state courts in holding that when class action litigation established a monetary fund for the benefit of the class members, and the trial court in its equitable powers awards class counsel a fee out of that fund, the court may determine the amount of a reasonable fee by choosing an appropriate percentage of the fund created.

Laffitte v. Robert Half Int'l, Inc., 1 Cal. 5th 480, 486, 503 (2016).  The court explained that "[t]he recognized advantages of the percentage method – including relative ease of calculation, alignment of incentives between counsel and the class, a better approximation of market conditions in a contingency case, and the encouragement it provides counsel to seek an early settlement and avoid unnecessarily prolonging litigation

---

values to certain non-monetary benefits" was rejected, and the Settlement approved. Bithell v. E.P. Mgmt. Servs., 2007 Cal. App. Unpub. LEXIS 9706, *18. Bankruptcy filings are often encountered in wage and hour litigation.  AH Decl. ¶ 20.

1  – convince us the percentage method is a valuable tool that should not be denied by our

2  trial courts." Id. (internal citations omitted) (holding that a trial court may award a fee

3  that is a percentage of a true common fund, regardless of lodestar, and affirming a $6.3

4  million fee even though the lodestar was between $2.9 and $3.1 million requiring a

5  multiplier of 2.03 or 2.13); see also Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1051

6  (2002) (multiplier of 3.65).

7      The common-fund doctrine is predicated on the principle of preventing unjust

8  enrichment.  It provides that, when a litigant's efforts create or preserve a fund from

9  which others derive benefits, the litigant may require the passive beneficiaries to

10  compensate those who created the fund.  Both state and federal courts in California have

11  embraced this doctrine.  Serrano v. Priest, 20 Cal.3d 25, 35 (1977).

12      With respect to the common fund method, since **all** of potential damages, penalties

13  and civil penalties derive from state law (such as in a diversity jurisdiction case), the

14  relevant benchmark is one third.  "An award of attorneys' fees incurred in a suit based on

15  state substantive law is generally governed by state law." Champion Produce, Inc. v.

16  Ruby Robinson Co., 342 F.3d 1016, 1024 (9th Cir.2003); Muniz v. UPS, 738 F.3d 214,

17  218 (9th Cir. 2013) (holding state law standards and factors considered in determining an

18  award of attorney fees).  "The task of a federal court in a diversity action is to

19  approximate state law as closely as possible in order to make sure that the vindication of

20  the state right is without discrimination because of the federal forum." Farmers Ins.

21  Exch. v. Law Offices of Conrado Joe Sayas, Jr., 250 F.3d 1234, 1236 (9th Cir. 2001)

22  (internal quotation marks omitted); see also Winterrowd v. Am. Gen. Annuity Ins. Co.,

23  556 F.3d 815, 827 (9th Cir. 2009) ("State law establishes the required showing for

24  attorney's fees in an action in diversity.")

25      In the present case, Plaintiffs have satisfied the prerequisite supporting payment of

26  fees by the beneficiaries of the common fund.  Under the doctrine, courts have

27  historically and consistently recognized that class litigation is increasingly necessary to

28  protect the rights of individuals whose injuries, penalties and/or liquidated damages are

too small to economically justify individual representation.  In <u>Paul, Johnson, Alston & Hunt v. Graulty</u>, 886 F. 2d 268, 271 (9th Cir. 1989), the Ninth Circuit embraced this principle when it stated that "it is well settled that the lawyer who creates a common fund is allowed an extra reward, beyond that which he has arranged with his client." <u>Id.</u> at 271.

Accordingly, in the determination of a reasonable common-fund fee award, the awarding of attorneys' fees is to serve as an economic incentive for counsel to bring class-action litigation in order to achieve increased access to the judicial system for meritorious claims and to enhance deterrents to wrongdoing.  This case provides remedies to the Settlement Class Members that otherwise would have been at public expense, or the employees would never have received payment of the compensation to which they are entitled.

**B.    Attorneys' Fees of 33 1/3% of the Settlement is Reasonable**

Plaintiffs seek a cumulative attorneys' fee award of one-third of the Settlement Fund or $1,600,000. This requested fee award should be approved because: (1) it is consistent with recent Federal and California court awards in similar smaller wage and hour class settlements; (2) it is reasonable in light of the substantial monetary and nonmonetary benefits conferred on the Class; (3) it achieves the dual purposes of a common fund award by spreading the litigation costs among those who benefited from the settlement while rewarding and encouraging competent counsel to handle complex, contingency, class action cases like this; and (4) the lodestar cross-check, *while not required*, nevertheless confirms its reasonableness.  Finally, as the Objection and Opt Out Period has not yet passed, the reaction of the Class is not fully known. Supplemental briefing will be filed by counsel once the Notice period has passed.

1.    <u>Requested Fee is Supported by Awards in Similar Cases</u>

The Ninth Circuit has generally established 25% of a common fund as a "benchmark" award for attorney fees.  <u>Vizcaino</u>, 290 F.3d at 1047.  However, the Ninth Circuit has also stated that the benchmark is the "starting point for analysis" and that "it

may be inappropriate in some cases." Id. at 1048.  The "[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." Id.  The district court's duty is to not presume benchmark percentage applies, but simply "whether in arriving at its percentage it considered all the circumstances of the case and reached a reasonable percentage."[5] Id.  Thus, the "exact percentage [awarded] varies depending on the facts of the case, and in most common fund cases, the award exceeds that benchmark." Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 491 (E.D. Cal. 2010) (emphasis added); In re Activision Sec. Litig., 723 F. Supp. at 1377 ("[a] review of recent reported cases discloses that nearly all common fund awards range around 30%"); Pokorny v. Quixtar, Inc., No. C 07-0201 SC, 2013 U.S. Dist. LEXIS 100791 *4 (N.D. Cal. July 18, 2013) (the "Ninth Circuit uses a 25% baseline in common fund class actions, and in most common fund cases, the award exceeds that benchmark, with a 30% award the norm absent extraordinary circumstances that suggest reasons to lower or increase the percentage").

Like California courts, district courts within this circuit routinely award attorneys' fees up to approximately one-third of the common fund, particularly for wage and hour class action settlements. Indeed, thirty to fifty percent is commonly awarded in cases in which the common fund is lower than the "mega fund" level (i.e. $50 to $200 million). See Rubenstein, Conte and Newberg, Newberg on Class Actions at § 14:6.  A review of California cases "reveals that courts usually award attorneys' fees in the 30-40% range in wage and hour class actions that result in recovery of a common fund under $10 million." Cicero v. DirecTV, Inc., 2010 U.S. Dist. Lexis 86920 at *17 (C.D. Cal. 2010).  These smaller class actions frequently involve fee awards in the range of one third because they do not implicate megafunds where a smaller percentage recovery is more appropriate. See Vandervort v. Balboa Capital Corp., 8 F. Supp. 3d 1200, 1209-10 (C.D. Cal. 2014).

In wage-hour class actions like this one, federal courts seated in California

---

[5]  One factor Vizcaino identified was the percentage awarded in other cases, which it stated reflects the lawyers' reasonable market expectations.  Vizcaino, 290 F.3d at 1050.

routinely award attorneys' fees of percentages equal to or greater than that sought by the Class Representatives in this action. See e.g. Birch v. Office Depot, Inc., Case No. 06-CV-1690 DMS, at *13 (S.D. Cal. Sept. 28, 2007) (awarding a 40% fee on a $16,000,000 wage and hour class action settlement); Fernandez v. Victoria Secret Stores, LLC, No. CV 06-04149-MMM-SHX, 2008 WL 8150856, at *16 (C.D. Cal. July 21, 2008) ("Considering the circumstances of this litigation, the court concludes that a **34%** award is fair and reasonable."); Vasquez v. Coast Valley Roofing, 266 F.R.D. 482 (E.D. Cal. 2010) (determining that in a wage-and-hour action putative class-action settlement an award of attorneys' fees in the amount of **33.3 percent** of the common fund was appropriate); Stuart v. Radioshack Corp., No. C–07–4499 EMC, 2010 WL 3155645, at *6 (N.D. Cal. Aug. 9, 2010) (awarding **33.3%** the settlement amount in attorney's fees); Wren v. RGIS Inventory Specialists, No. C-06-05778, JCS, 2011 WL 1230826, at *29 (N.D. Cal. Apr. 1, 2011) (approving fee award that constituted 42% of the common fund in wage and hour class and collective action); Boyd v. Bank of Am. Corp., No. SACV 13-0561-DOC, 2014 WL 6473804, at *12 (C.D. Cal. Nov. 18, 2014) (**33.3 %** attorney fee award was appropriate given "the exceptional terms of the Settlement, in both the monetary and non-monetary relief; the overwhelming support of the class for the settlement; and the considerable risks in litigation."); Deaver v. Compass Bank, No. 13-CV-00222-JSC, 2015 WL 8526982, at *11 (N.D. Cal. Dec. 11, 2015) (awarding attorney fee award of **33%** of the total settlement amount); Betancourt v. Advantage Human Resourcing, Inc., No. 14-CV-01788-JST, 2016 WL 344532, at *9 (N.D. Cal. Jan. 28, 2016) (stating that **34.3%** of the common fund was "fair and reasonable"); Osegueda v. N. Cal. Inalliance, No. 18-cv-00835 WBS EFB, 2020 U.S. Dist. LEXIS 128626, 2020 WL 4194055, at *16 (E.D. Cal. July 21, 2020) (awarding **33.33%** of settlement fund); Kendall v. Odonate Therapeutics, Inc., No. 3:20-CV-01828-H-LL, 2022 U.S. Dist. LEXIS 101021, 2022 WL 1997530, at *6 (S.D. Cal. June 6, 2022) (awarding **33 1/3%** of $12.75 million settlement fund); Jiangchen v. Rentech, Inc., 2019 U.S. Dist. LEXIS 200668, 2019 WL 6001562, at *1 (C.D. Cal. Nov. 8, 2019) (awarding **33 1/3%** of $2.05

1  million settlement fund).

2      **The same is true in state courts**.  "[A] review of California cases . . . reveals that

3  courts usually award attorneys' fees in the 30-40% range in wage and hour class actions

4  that result in recovery of a common fun[d] under $10 million." Watson v. Tennant Co.,

5  No. 2:18-cv-02462 WBS DB, 2020 U.S. Dist. LEXIS 166823, 2020 WL 5502318, at *7

6  (E.D. Cal. Sep. 11, 2020) (awarding **33.33%** of settlement fund);  Chavez v. Netflix, Inc.,

7  162 Cal. App. 4th 43, 66 n.11 (2008) (fee awards "average around **one-third** of the

8  recovery"); Consumer Privacy Cases, 175 Cal. App. 4th 545, 557 n.13 (2009) [noting that

9  fee awards in class actions average around **one third** of common fund]); Urethane Cases

10 (S.F. Super. Ct., June 25, 2013, No. CJC-04-004367) [award of **one-third** of settlement

11 fund]; Contreras v. Bank of Am., N.A. (S.F. Cnty. Super. Ct. Sept. 3, 2010) No. CGC-07-

12 467749 (fee award of **one-third** of $16,650,000 fund in wage and hour settlement);

13 Barrett v. The St. John Cos. (L.A. Cnty. Super. Ct. July 9, 2009) No. BC354278 (**33⅓%**

14 award of $1.1 million settlement in wage and hour class action); Case, et al. v. Toyohara

15 Am. Inc. (L.A. Cnty. Super. Ct. May 31, 2006) No. BC328111 (**same**); Marroquin v. Bed

16 Bath & Beyond (Alameda Cnty. Super. Ct. June 22, 2004) No. RG04145918 (**same**);

17 Crandall v. UHaul Int'l, Inc. (L.A. Cnty. Super. Ct. Aug. 17, 2001) No. BC178775 (**40%**

18 award in wage and hour class action); Tokar v. GEICO (San Diego Cnty. Super. Ct. July

19 9, 2004) No. GIC 810166 (approving award of attorney's fees of **33-1/3%** of recovery);

20 Davis v. The Money Store, Inc. (Sacramento Cnty. Super. Ct. Decl. 26, 2000) No.

21 99AS01716 (**33-1/3%** of $6,000,000 settlement); Big Lots Overtime Cases, (San

22 Bernardino Cnty. Super. Ct., JCC Proceeding No. 4283, Feb. 4, 2004) (**33%** fee

23 recovery).

24      Indeed, it is not unheard for an award to be as high as 45% of the common fund.

25 See e.g. Abzug v. Kerkorian (L.A. Super. Ct., November 1990, CA-000981 [**45-percent**

26 **fee** of $35 million class action settlement]; Haitz v. Meyer, et al., (Alameda Super. Ct.,

27 August 20, 1990, No. 572968-3) [**45-percent** fee award]).

28      In light of the foregoing authorities, as well as the significant non-monetary results

achieved in the reimbursement of cell phone expenses and the payment of premium
wages for missed meal periods, Plaintiffs' request for a fee of 33 1/3% of the total
$4,800,000 case settlement is reasonable.

2.    A Fee Award of 33 1/3% of the Settlement Fund is Fair and Reasonable in
Light of the Substantial Monetary Benefits Obtained for the Class and Risks Faced by
Class Counsel

In addition to these equity and market considerations, courts also look to the
following factors to assess the reasonableness of a common fund award: (1) the results
achieved; (2) the riskiness of prosecuting the litigation; (3) the skill and high quality of
work by counsel; and (4) the financial burden carried by Class Counsel in prosecuting the
case on a contingency basis.  Serrano v. Priest, 20 Cal.3d 25, 49 (1977); Lealao v.
Beneficial Calif., Inc., 82 Cal. App. 4th 19, 26 (2000); see also Vizcaino, 290 F.3d at
1048-50 (internal quotation and citation omitted).  As discussed below, all of these
factors justify Plaintiff's fee request.

a.  *The fee request is justified by the positive results achieved.*

The ultimate reasonableness of the fee "is determined primarily by reference to the
level of success achieved by the plaintiff." McCown v. City of Fontana, 565 F.3d 1097,
1102 (9th Cir. 2009).  Here, Class Counsel achieved a solid result and obtained
significant relief for the Class, which justifies the requested fee award. For wage-and-
hour and wage statement violations that many Class Members did not even know existed
until they received the Class Notice, Class Counsel has secured a nonreversionary
Settlement Fund of $4,800,000.  Class Members who do not opt out will receive a share
of the Net Settlement Amount with the smallest recovery being $10.00 and the highest
recovery estimated to be $$1,310,16, depending on the number of pay periods of the
Class Member.  CPT Decl. ¶ 16; Harris Decl. Ex. 1 ¶ 15. (b).  This recovery represents
substantial relief for the Class given the complexity of the issues as well as the risk and
uncertainty associated with trying such complex wage-and-hour claims at trial.  Under
the circumstances a fee award of one-third of the Settlement Fund, or $1,600,000, is

reasonable and appropriate.

Significantly, with respect to the matter of reimbursing crew for their use of personal cell phones, Rojas received no reimbursement for his cell phone use when working on a Twentieth Century Fox motion picture in 2017, but by September of 2022, he was routinely receiving such payments.  AH Decl. ¶ 20.

      b. *The risks associated with this litigation justify the fee request.*

Class counsel has taken considerable risk in litigating this case—not just because it was done on a wholly contingency basis (as discussed below) but also because complex, representative wage-and-hour litigation is an ever-emerging area under the law.  As set forth in greater detail in Plaintiffs' concurrently filed Motion for Final Approval of Class Action Settlement, despite the numerous alleged violations, recovery is far from guaranteed and could only occur after years of costly litigation that is rife with risk. Defendants asserted and would have continued to assert, through certification, trial and the appellate process, legal and factual grounds to defend themselves.  Defendants denied any wrongdoing associated with the alleged violations and, if litigation continued, would have vehemently opposed Plaintiff's claims, with relatively unlimited resources, at the certification, trial, and appellate stages.  Amongst other things, certification and success at trial would require establishing that the Class Members were subject to a uniform practice of underpayment of wages, denying rest and meal periods, and that wage statement violations were committed, and which were knowing and intentional and that Class Members actually suffered injury as a result of the allegedly inaccurate wage statements.  Plaintiff also faced the significant and undeniable risk that the civil penalties sought under the PAGA would be denied or reduced, possibly significantly, if the Court determined that imposition of full penalties would be unjust, arbitrary, oppressive or confiscatory.  See Cal. Lab. Code, §§ 2699.3, subd. (c), 2699, subd. (e)(2).  While Class Counsel believes evidence exists from which the trier of fact could conclude that Defendants engaged in a pattern and practice of the alleged violations of the California Labor Code, continued litigation is guaranteed to be costly, time consuming and

uncertain.  By contrast, the proposed Settlement Agreement ensures timely, meaningful and substantial relief to the Class.  Success by Plaintiff on any of these issues was not a foregone conclusion at any time.  Nevertheless, Class Counsel persevered at great risk (while foregoing other profitable work) on a contingency basis, worked together in good faith so as to reach a global and adequate settlement, and brought this case to sound resolution for the Class Members.  As such, these numerous litigation risks further justify the sought fees award.

      *c.  The skill of class counsel and the quality of their work justifies the fee request.*

      Class counsel has demonstrated substantial skill, diligence, and high quality of work in achieving the proposed Settlement, creating a Settlement Fund of $4,800,000.  The Settlement, and the substantial monetary and non-monetary benefits it conveyed upon the Class, was obtained efficiently and effectively without wasted effort or years of needless, costly litigation.  As a result of the skill and tremendous effort of Class Counsel, Plaintiffs were well-positioned to reach a favorable settlement on for the Class, which itself required significant expertise and protracted, at times contentious negotiations to achieve.

      *d.  The contingent nature of the fee and financial burden carried by class counsel justifies the fee request*

      A law firm that prosecutes class action cases does not get paid in every case.  Sometimes, it gets nothing or is awarded fees equal to only a small percentage of the amount it actually had worked.  Where plaintiffs' counsel does succeed, therefore, it is appropriate to compensate the firm for the risks the firm regularly undertakes.  As the California Supreme Court has explained:

> [A] contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much

higher than that of conventional loans. A lawyer who both bears the risk of
not being paid and provides legal services is not receiving the fair market
value of his work if he is paid only for the second of these functions. If he is
paid no more, competent counsel will be reluctant to accept fee award cases.
Ketchum v. Moses, 24 Cal. 4th 1122, 1132-33 (2001) (internal citation and quotation
omitted). Accordingly, courts have recognized that "[i]t is an established practice in the
private legal market to reward attorneys for taking the risk of non-payment by paying
them a premium over their normal hourly rates for winning contingency cases." Fischel
v. Equitable Life Assurance Soc'y of U.S., 307 F.3d 997, 1008 (9th Cir. 2002).  In this
case, Class Counsel have worked diligently since 2021, and in effect have loaned their
legal services to the entire Class since that time.  Class Counsel have prosecuted this case
wholly on a contingency basis, and have done so at great risk of never receiving any
compensation due to the risky nature of class action litigation in general, and also due to
*acutely* risky nature of employment class action litigation).  Class Counsel took a
tremendous risk by taking on this case, and persevered to attain this Settlement on behalf
of the Class. To date, Class Counsel have spent $19,973.78 in costs and expended over
722.9 hours of time, with significant additional work remaining to be done, *without
receiving any compensation at all*. Meanwhile, all of this entailed passing on other,
lucrative cases.  The risks endured by Class Counsel further justifies the fee request.

     3.    **The Requested Fee Award Fairly Spreads the Litigation Costs Among
the Settlement Beneficiaries**

     The percentage-of-the-fund approach is an appropriate method for reviewing
attorneys' fees here because it allows Plaintiff and Class Counsel to create "a fund from
which others will benefit [and] to require those other beneficiaries to bear their fair share
of the litigation costs."  Nw. Energetic Servs., LLC v. Cal. Franchise Tax Bd., 159 Cal.
App. 4th 841, 878 (2008) (citing Serrano, 20 Cal. 3d at 35).  This approach ensures that
the class members, who have accepted the benefits from a common fund recovery, also
accept their fair *pro rata* responsibility to contribute towards the attorneys' fees and costs

that created the fund in the first place. <u>Earley v. Superior Court</u>, 79 Cal. App. 4th 1420, 1436 (2000). In other words, "[t]hose who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." <u>In re Wash. Pub. Power Supply Sys. Sec. Litig.</u>, 19 F.3d 1291, 1300 (9th Cir. 1994). Accordingly, the percentage-of-the-fund approach is appropriate here and supports Class Counsel's request for an award of a percentage of the common fund (i.e., 33 1/3 % of the $4,800,000 Settlement Fund).

In addition to spreading the litigation costs among all the beneficiaries, awards of common fund fees are essential to furthering the important societal goal of attracting competent counsel to handle these often-complex contingency cases, "who will be more willing to undertake and diligently prosecute proper litigation for the protection or recovery of the fund if [attorneys are] assured that [they] will be promptly and directly compensated should [their] efforts be successful." <u>Melendres v. City of Los Angeles</u>, 45 Cal. App. 3d 267, 273 (1975). "Given the unique reliance of our legal system on private litigants to enforce substantive provisions of law through class and derivative actions, attorneys providing the essential enforcement services must be provided incentives roughly comparable to those negotiated in the private bargaining that takes place in the legal marketplace, as it will otherwise be economic for defendants to increase injurious behavior." <u>Lealao v. Beneficial Calif., Inc.</u>, 82 Cal. App. 4th 19, 47 (2000). Without such incentives, meritorious class actions such as this would not be brought and thus the private enforcement of important statutory rights would be undermined.

California courts further recognize "the amount of attorney fees typically negotiated in comparable litigation should be considered in the assessment of a reasonable fee in representative actions in which a fee agreement is impossible." <u>Lealao</u>, 82 Cal. App. 4th at 47. By doing so, courts can ensure that the awarded fee approximates the legal marketplace by being comparable to what clients and counsel would have likely negotiated at the outset of the matter. Notably, the typical contingency fee contract ranges from 20 to 40 percent of the total recovery—leaving Plaintiffs' requested

1  attorneys' fees roughly in the middle of the spectrum.  <u>Chavez</u>, 162 Cal. App. 4th at 64-
2  65.

3       Here, Plaintiff's requested fee award constitutes a fair charge in light of the
4  substantial monetary and non-monetary relief obtained for the Class. Because each Class
5  Member can claim a share of the non-reversionary, Settlement Fund, equity requires that
6  they also contribute a pro rata share to the attorneys' fees that netted them this positive
7  result.  Moreover, the requested fee, i.e., 33 1/3% of the common fund, is comparable to
8  1) typical fees awarded in small wage and hour class actions like this one, 2) most
9  contingency fee retainer agreements, and 3) the fee that Class Counsel would have
10 expected if they had negotiated individual retainer agreements with each Class Member.
11 <u>Chavez</u>, 162 Cal. App. 4th at 64-65.  Thus, the requested award ensures that Class
12 Counsel receive an appropriate fee award for the actual benefit conferred to the Class,
13 particularly where it would impossible ex ante to enter a fair fee arrangement with all the
14 members of the Class.

15      **C.    The "Lodestar" Method Cross-Check.**

16      Since 1977, California has followed the policy of awarding attorney's fees in cases
17 involving matters of public interest.  <u>Serrano v. Priest</u>, 20 Cal. 3d 25 (1977) ("<u>Serrano</u>
18 <u>III</u>").  In doing so, it has, from the beginning, adopted the "lodestar" approach.  <u>Serrano</u>
19 <u>III</u> at 48 n. 23.  The efforts of counsel, resulting in payments to Plaintiffs and those Class
20 members who participated, vindicated a fundamental public policy of the Labor Code of
21 the State of California (as opposed to a large cash recovery).  The lodestar method can
22 serve as a cross check to a percentage-of-fund-approach.

23      The "lodestar" approach in calculating fees in cases such as this was established in
24 <u>Serrano III</u>.  In 2000, the Supreme Court, in the context of fees awarded under section
25 1717 of the California Civil Code, reaffirmed its commitment to the lodestar approach.
26 <u>PLCM Group, Inc v. Drexler</u>, 22 Cal. 4th 1084, 1091 (2000).  In 2001, it again reaffirmed
27 that commitment in the context of fees to be awarded under section 425.16 of the
28 California Code of Civil Procedure in so-called SLAPP cases.  <u>Ketchum v. Moses</u>, 24

Cal. 4th 1122, 1132–33 (2001).

The clear teaching of the Supreme Court cases is that that there are two factors that are not to be considered in establishing the lodestar figure.  One of these prohibited factors is the amount of the recovery achieved on behalf of the client.  The two seminal cases are <u>Serrano III</u> and <u>Press v. Lucky Stores</u>, 34 Cal. 3d 311, 322 (1983).  In the first, no monetary recovery at all was sought or awarded.  In the second, the trial court denied attorney's fees on the explicit basis that only injunctive relief had been sought and, hence, no fund had been created.  The Supreme Court unhesitatingly rejected this approach and ordered fees awarded on a lodestar basis.  Likewise, in <u>Ketchum</u>, there was no monetary recovery because counsel's efforts consisted of succeeding in dismissing the plaintiff's abusive lawsuit.

The second of the prohibited factors is the actual cost to the client of the attorney's services.  In the "<u>Serrano</u> series" of opinions, the State Treasurer, challenging the amount of the award, sought discovery of the actual cost of the attorneys' services.  Denial of such discovery was upheld on the grounds that it was irrelevant; the only relevant factor is the market rate for the services rendered.  <u>Serrano v. Unruh</u>, 32 Cal. 3d 621, 641–42 (1982) ("<u>Serrano IV</u>").  In <u>PLCM</u>, the Supreme Court soundly rejected a contention that, because the prevailing party was represented by in-house counsel, actual cost rather than market rate should apply.  <u>PLCM</u>, 22 Cal. 4th at 1091.  In <u>Ketchum</u>, counsel was proceeding on a contingent-fee basis because, as the evidence showed, the defendant he was representing could not afford to compensate him on an hourly basis.

The opinion in <u>Ketchum</u> is instructive and binding on a number of other points.  First, it reaffirms the rule that the lodestar figure is calculated by using the prevailing hourly rates for comparable legal services in the community.  <u>Ketchum</u>, 24 Cal. 4th at 1132.  Next, it explicitly recognizes that, in addition to the expertise presumptively enjoyed by the trial-court judge, it is proper to offer expert opinion by way of declaration or otherwise as to the prevailing rate for the sort of service rendered.  <u>Id.</u> at 1128.  It also reaffirms the rule that the lodestar includes hours reasonably spent in applying for fees

and in defending the fee award. Id. at 1133.

The lodestar figure is arrived at by a compiling the professional time reasonably spent and the applicable hourly rate for each attorney. Serrano III, 20 Cal. 3d at 48; Ramos v. Countrywide Loans, 82 Cal. App. 4th 615, 622–23 (2000).

Were the courts to limit attorney's fees to the amount of the recovery, competent counsel would be prohibited from vigorously representing unpaid employees in cases of this nature. A recalcitrant employer could, by stonewalling a plaintiff, deprive Plaintiff's Counsel of a reasonable fee. Stokus v. Marsh, 217 Cal. App. 3d 647, 657 (1990). In Stokus, the municipal court, following litigation in an unlawful-detainer case, awarded $75,000 in fees. Here, review of the detailed time records of Class Counsel, in which work is recorded to the tenth of an hour, without block billing, compels a conclusion that the requested lodestar is appropriate.

## C. Lodestar Rates Are Market Rates.

The hourly rates to be utilized in establishing the lodestar figure are market rates. This has a number of important ramifications, and the market-rate principle applies both to attorney's fees and to services such as paralegal fees. That the hourly rate to be used in calculating the lodestar is not the actual cost of the services but is instead the market rate was re-affirmed by the California Supreme Court in PLCM, in which the Court rejected a contention that, because the services were rendered by in-house counsel, the rate should be based upon the cost to the client. PLCM Grp. v. Drexler, 22 Cal. 4th 1084, 1096 (2000), as modified, (June 2, 2000); see also Serrano IV, 32 Cal.3d 621 (1982), discussed above. Indeed, the lodestar is established by ascertaining the market rate even where the legal services were rendered pro bono. Hayes v. Ward, 3 Cal. App. 4th 618, 628 (1992). Likewise, paralegal fees are to be set at market rate. Sundance v. Mun. Court for the Los Angeles Judicial Dist., 192 Cal. App. 3d 268, 274–75 (1987). In Sundance, the trial court was reversed for declining to award compensation for 850 hours of paralegal time on the ground that it had been volunteered, in other words, that it cost nothing.

Although a trial judge is deemed to possess unique insight into the value of services
rendered in his or her courtroom, this may properly be supplemented by reference to
expert testimony, especially as to the value of services rendered before other judges and
in other courtrooms.  Mandel v. Lackner, 92 Cal. App. 3d 747, 762 (1979).  The relevant
community is that in which the court sits, in this case Los Angeles.  The rates used by
Class Counsel are within the range of rates recently approved for class actions.  See, e.g.,
Pierce v. County of Los Angeles, 2012 U.S. Dist. LEXIS 150492, at *42–52 & n.16
(C.D. Cal. Mar. 2, 2012) (approving rates of up to **$850**); In re HP Laser Printer Litig.,
2011 U.S. Dist. LEXIS 98759, at *14–19 (C.D. Cal. Aug. 31, 2011) (approving rates of
up to **$800**); Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles,
2009 U.S. Dist. LEXIS 132269, at *15–16 (C.D. Cal. June 24, 2009) (approving rates of
up to **$800**); Wang v. Chinese Daily News, Inc., 2008 U.S. Dist. LEXIS 123824, at *8–9
(C.D. Cal. Oct. 3, 2008) (approving rates of up to **$800**), vacated on other grounds, 132 S.
Ct. 74 (2011); In re Schering-Plough Corp. Enhance Sec. Litig., No. 08-397 (DMC)
(JAD), 2013 WL 5505744, at *58 n.43 (D.N.J. Oct. 1, 2013) (**$875** per hourly rate for a
"very experienced class action lawyer" characterized as "extremely reasonable, if not a
bargain").  These cited cases found at least five years ago that the rates counsel is now
seeking this Court to approve were reasonable.  Rather than employing a multiplier, Class
Counsel's present fee request of represents but a fraction of the lodestar.  The request is
reasonable.  Moreover, Class Counsel's rates have been approved in connection with
other class-wide settlements.  AH Decl. ¶¶ 31-32.  This establishes their reasonableness.
See Rutti v. Lojack Corp., 2012 U.S. Dist. LEXIS 107677, at *30–31 (C.D. Cal. Jul. 31,
2012) (explaining that "'[a]ffidavits of the Plaintiff's attorney and other attorneys
regarding prevailing fees in the community, and rate determination in other cases,
particularly those setting a rate for the Plaintiff's attorney, are satisfactory evidence of the
prevailing market rate'") (quoting United Steelworkers of Am. v. Phelps Dodge Co., 896
F.2d 403, 407 (9th Cir. 1990)).

For example, Judge Fitzgerald, in granting final approval to settlement of a hotly

contested class action, found that Harris & Ruble "exercised considerable skill in the litigation of the motion for class certification, dispositive motions to dismiss, and substantial discovery, and they did so against experienced, highly skilled opposing counsel and on an entirely contingent basis." Schroeder v. Envoy Air, Inc., C.D. Ca. (No. CV 16-4911-MWF, April 22, 2019), p. 12.   Further, a fee of 33% of the recovery was awarded, id., 12-13, the district court approving hourly rates as follows: "$210 for law clerks and paralegals, $350 for junior associates, $750 for senior associates, and between $500 and $890 for partners" id. 13.

### D.    The Total Hours Expended Were Reasonably Required.

Class Counsel spent a reasonable number of hours for the work required in this matter, all of which effort should be considered in making the fee award.  Professional time reasonably and necessarily expended in securing an award of attorney's fees is subject to reimbursement.  Serrano IV, 32 Cal. 3d 621, 624 (1982); Guinn v. Dotson, 23 Cal. App. 4th 262, 270 (1994).  See AH Decl. Ex. 2.

### E.    The Total Lodestar Dollar Amount.

Plaintiffs achieved an outstanding result with a gross $4,800,000 settlement, which will pay wages and penalties to participating Settlement Class Members on account of alleged Labor Code violations.  The total hours and expenses incurred is reasonable for cases of this nature.  The total lodestar in this case is $543,891 for approximately 722.9 hours of work this case.  AH Decl. ¶¶ 28-30.  This request amounts to a 2.94 multiplier. The amount requested is reasonable considering the result obtained for the Settlement Class Members.  It also includes an anticipated 25 additional hours of work that will be required after final approval increasing the lodestar by $17,500 (=25 hours x $700).

### F.    A Multiplier is Appropriate.

California law provides that while "the unadorned lodestar reflects the general local hourly rate for a *fee-bearing case*; it does *not* include any compensation for contingent risk, extraordinary skill, or any other factors a trial court may consider[.]"  Ketchum, 24 Cal. 4th at 1138.  "Once the court has fixed the lodestar, it may

increase or decrease that amount by applying a positive or negative 'multiplier' to take
into account a variety of other factors, including the quality of the representation, the
novelty and complexity of the issues, the results obtained, and the contingent risk
presented." Laffitte, 1 Cal.5th at 489; see also Ketchum, 24 Cal. 4th at 1132 (noting that
court may also consider "the extent to which the nature of the litigation precluded other
employment by the attorneys").  "The purpose of such an adjustment is to fix a fee at the
fair market value for the particular action. In effect, the court determines, retrospectively,
whether the litigation involved a contingent risk or required extraordinary legal skill
justifying augmentation of the unadorned lodestar in order to approximate the fair market
rate for such services." Ketchum, 24 Cal. 4th at 1132.  "Once the court establishes the
lodestar amount, it may enhance the fee award by a multiplier in order to make an
appropriate fee award. Serrano, 20 Cal. 3d at 48-49: Press, 34 Cal. 3d at 321- 322.  Risk
multipliers are available under California, and more commonly, in contingency cases.
See Ketchum, 24 Cal. 4th 1122, 1136-37; Greene v. Dillingham Construction N.A., Inc.,
101 Cal. App. 4th 418, 426-29 (2002); Weeks v. Baker & McKenzie, 63 Cal. App. 4th
1128, 1169-77 (1998); Flannery v. California Highway Patrol, 61 Cal. App. 4th 629
(1998); Bowman v. City of Berkeley, 131 Cal. App. 4th 173, 177 (2005); see also
Mangold v. Cal. Pub. Util. Comm'n, 67 F.3d 1470, 1478 (9th Cir. 1995).  "The
contingency adjustment may be made at the lodestar phase of the court's calculation or
by applying a multiplier to the noncontingency lodestar calculation (but not both)."
Horsford v. Board of Trustees of California State University, 132 Cal. App. 4th 359, 395
(2005).  The size of the monetary recovery by itself does not limit the amount of fees.
City of Riverside v. Rivera, 477 U.S. 561 (1986) ($33,350 damages award; $245,456 fees
award); Graciano v. Robinson Ford Sales, Inc., 144 Cal. App. 4th 140, 153 (2006); Beaty
v. BET Holdings, Inc., 222 F.3d 607, 612 (9th Cir. 2000).  See also Dang v. Cross, 422
F.3d 800, 813 (9th Cir. 2005); Quesada v. Thomason, 850 F.2d 537, 539-40 (9th Cir.
1988).  Enhancement is available for exceptional quality of representation and results.
Pennsylvania v. Delaware Valley Citizens' Council, 478 U.S. 546 (1986).  Several

factors may be considered by the court in determining whether to augment the fee:

> (1) the novelty and difficulty of the questions involved, and the skill displayed in presenting them;

> (2) the extent to which the nature of the litigation precluded other employment by the attorneys;

> (3) the contingent nature of the fee award, both from the point of view of eventual victory on the merits and the point of view of establishing eligibility for an award;

> (4) the result obtained by the litigation;

> (5) any delay in receipt of payment; and

> (6) the public impact of the litigation

Serrano, 20 Cal. 3d at 48-49; also see Chavez, 162 Cal. App. 4th at 66 (affirming multiplier of 2.5, and citing authority that "multipliers can range from 2 to 4 or even higher."); City of Oakland v. Oakland Raiders, 203 Cal. App. 3d 78, 83 (1988) (multiplier of 2.34). Though all these factors and others can be considered, the contingent nature of a case alone justifies application of a positive multiplier. See Center for Biological Diversity v. County of San Bernardino, 185 Cal. App. 4th 866, 897 (2010) (affirming 1.5 multiplier based on contingent risk alone). Any one factor may justify an enhancement. Krumme v. Mercury Ins. Co., 123 Cal. App. 4th 924, 947 (2004).

In this case, Class Counsel's actual lodestar is $543,891 for 722.9 hours performed through completion of the mailing of Class Notice. Class Counsel seeks $1,600,000 in attorneys' fees, or 33 1/3 percent of the settlement fund. Consequently, Class Counsel seeks payment of approximately 2.94 times the lodestar. This is within the range of reasonableness for fee awards in other class actions. See, e.g., Wershba v. Apple Computer, Inc., 91 Cal. App. 4th 224, 255 (2001) ("Multipliers can range from 2 to 4 or even higher."); see also City of Oakland v. Oakland Raiders, 203 Cal. App. 3d 78, 84–85 (1988) (**2.34 multiplier**). It is common for attorneys' fee awards in successful class actions, calculated on a feespreading basis, to exceed—often by multiples—the lodestar

value of the time spent by counsel.  See, e.g., In re Sutter Health Uninsured Pricing Cases, 171 Cal. App. 4th 495, 412 (2009) (affirming that **multiplier of 2.52** was "fair and reasonable"); Chavez, 162 Cal. App. 4th at 66 (affirming award of fees **2.5 times** lodestar in consumer class action); Glendora Cmty. Redev. Agency v. Demeter, 155 Cal. App. 3d 465, 479-481 (1984) (affirming **multiplier of 12**); Contreras v. Bank of Am., N.A. (S.F. Cnty. Super. Ct. Sept. 3, 2010) No. CGC-07-467749 (approving one-third of common fund fee award, which was **2.73 multiplier** of lodestar); Vizcaino, 290 F.3d at 1051 & n.6 (affirming lodestar **multiplier of 3.65** in light of complexity and risk of case and surveying 34 class common fund settlements to find that **83% of multipliers were in the 1 to 4 range**); Vandervort, 8 F.Supp.3d at 1210 (awarding one-third of fund, which was **2.52 multiplier** of lodestar); Boyd, 2014 WL 6473804, at *11 (awarding one-third of fund, which was **2.58 multiplier of lodestar**); Hopkins v. Stryker Sales Corp., No. 11-CV-02786-LHK, 2013 WL 496358, at *6 (N.D. Cal. Feb. 6, 2013) (approving fee award that represented a **multiplier of 2.76** as falling within the "majority" range for risk multipliers); Buckingham, et. al. v. Bank of America, United States District Court, Northern District, Case No. 3:15-cv-06344-RS, Docket No. 103 (N.D. Cal. 2015) approving lodestar **multiplier of 5.31**).

    1. This Case Presented Novel and Complex Issues, and the Result Achieved by Plaintiffs' Counsel Warrants a Fee Enhancement.

    As this Court is no doubt aware this case presented novel and complex issues - even more so than most wage and hour cases, which are already inherently complex.  The novel and complex nature of this case, together with the skill displayed in litigating these issues favors enhancement of the fee award.  Serrano, 20 Cal. 3d at 49.  Particularly because of the paucity of legal authority addressing Labor code 226(a)(6) for day players in the motion picture industry, this case was more complex and challenging than most other wage and hour class litigation.  To address the legal issues raised by this case, Plaintiffs were required to synthesize the significant body of law concerning the meal and rest break, final wage, and wage statement issues.

The lodestar may also be enhanced when "an exceptional effort produced an exceptional benefit." Graham v. DaimlerChrysler Corp., 34 Cal. 4th 553, 582 (2004). The extraordinary skill on the part of Plaintiffs' counsel is best demonstrated by the exceptional result achieved, facing off against skilled defense counsel. This exceptional result was only possible because of the exceptional effort of Plaintiffs' counsel.

2. Representation of Plaintiffs Carried with it the Substantial Risk that Counsel Would Receive No Compensation for Their Legal Services.

Plaintiffs' attorneys all undertook representation of Plaintiffs in this costly and time-consuming case on a contingency basis. AH Decl. ¶ 28. It is well established that enhancement of the lodestar is necessary to account for such risk. See Serrano, 20 Cal. 3d at 49. The "contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans." Ketchum. 24 Ca1. 4th at 1132. Legal services provided on a contingent with the hope of being paid upon a favorable litigation outcome, also inherently involve delay in receipt of payment further justifying an enhancement of Plaintiffs' lodestar. See Graham, 34 Cal. 4th at 579. Courts have additionally noted that, "an enhancement of the lodestar amount to reflect the contingency risk is 'one of the most common fee enhancers'." Bernardi v. County of Monterey 167 Cal. App. 4th 1379, 1399 (2008). More recently, the California Court of Appeals affirmed the application of a multiplier of 1.5 based solely on the contingent risk. See Center for Biological Diversity v. County of San Bernardino 185 Cal. App. 4th 866, 897 (2010); see also Nishiki v. Danko Meredith, APC, 25 Cal. App. 5th 883, 898 (2018), review denied (Nov. 14, 2018) (contingency risk supported application of 1.5 multiplier to lodestar amount). "The purpose of a fee enhancement, or so-called multiplier, for contingent risk is to bring the financial incentives for attorneys enforcing important constitutional rights into line with incentives they have to undertake claims for which they are paid on a fee -for -services basis." Ketchum, 24 Cal. 4th at 1132.

Here, Plaintiffs' counsel faced a significant risk of receiving no compensation for their work.  Indeed, the actions and remarks of Defendants and its attorneys all show that this case carried significant risk.  Had Defendants' assessment of this case been correct, Plaintiffs' counsel may have gone uncompensated.  Having provided legal services at the substantial risk of not being compensated at all, Plaintiffs' attorneys should have their lodestar enhanced accordingly.

3. <u>This Case Precluded Other Employment of Plaintiffs' Counsel</u>.

This case and the burden of being responsible for the tens of thousands of workers throughout the State, has demanded a tremendous expenditure of time, particularly for a small firm like Harris & Ruble.  For that reason too, Plaintiffs' lodestar should be enhanced by a multiplier.

4. <u>Plaintiffs' Litigation Has Had a Broad Public Impact</u>.

Finally, Plaintiffs' fee award also should be increased to reflect the broad impact this case has had.  California law is that it is appropriate to enhance an award by means of a multiplier to reflect the broad public impact of the results obtained.  <u>Weeks v. Baker & McKenzie</u>, 63 Cal. App. 4th 1128. 1172 (1998); <u>Coalition for L.A. County Planning Etc. Interest v. Bd. of Supervisors</u>, 76 Cal. App. 3d 241, 251 (1977) (affirming multiplier of fee award based in part on importance of the suit and the public nature of plaintiff's position).  Specifically, the California Supreme Court has recognized the public interest in enforcing California's labor laws.  <u>Sav–On Drug Stores, Inc. v. Superior Court</u>, 34 Cal.4th 319, 340 (2004).  In light of the broad public impact of this case, and the importance of the rights vindicated, a significant lodestar multiplier is appropriate.

**G.  The Award Should Include All Reasonably Incurred Costs & Expenses.**

The cases cited in the preceding sections of this Memorandum universally approve awards that include reimbursement of all costs and expenses reasonably incurred by counsel in the litigation.  These are not limited to the costs recoverable under sections 1032 and 1033.5 of the Code of Civil Procedure.  In other words, those costs and expenses that would properly be included in a memorandum of costs and disbursements.

1    Bussey v. Affleck, 225 Cal. App. 3d 1162, 1166 (1990); Cal. Hous. Fin. Agency v. E.R.

2    Fairway Assocs. I, 37 Cal. App. 4th 1508, 1514–15 (1995); Arhntz Contracting Co. v. St.

3    Paul Fire and Marine Ins. Co., 47 Cal. App. 4th 464, 492 (1996).

4        The Harris Declaration filed and served herewith sets out such expenses in detail.

5    AH Decl., Ex. 3.  The request for reimbursement of $19,973.78 in costs is reasonable

6    considering that it is slightly less than all costs to date and that the Class has secured a

7    good result.

8        **H.    The Court Should Award Plaintiffs an Incentive Award**

9        The Settlement provides for an additional payment in the amount of $5,000 to each

10   Plaintiff totaling $10,000 on account of the services rendered to the Settlement Class in

11   bringing this litigation, the time devoted, as well as the broad release made in connection

12   with the Settlement.  Incentive awards "are not uncommon and can serve an important

13   function in promoting class action settlements."  Sheppard v. Consol. Edison Co. of

14   N.Y., Inc., 2002 U.S. Dist. LEXIS 16314 at *16 (E.D.N.Y. filed Aug. 1, 2002).  "Courts

15   routinely approve incentive awards to compensate named plaintiffs for the services they

16   provided and the risks they incurred during the course of the class action litigation."  In re

17   S. Ohio Corr. Facility, 175 F.R.D. 270, 272 (S.D. Ohio 1997), rev'd on other grounds,

18   191 F.3d 453 (6th Cir. 1999).  It is appropriate to provide a payment to class

19   representatives for his or her services to the class.  Van Vraken v. Atlantic Richfield Co.,

20   901 F. Supp. 294, 299 (N.D. Cal. 1995); Wang v. Chinese Daily News, Inc., 231 F.R.D.

21   602, 614 (C.D. Cal. 2005) ("Proceeding by means of a class action avoids subjecting each

22   employee to the risks associated with challenging an employer"); Bogosian v. Gulf Oil

23   Corp., 621 F. Supp. 27, 32 (E.D. Pa. 1985); St. Marie v. Eastern R.R. Ass'n., 72 F.R.D.

24   443, 449 (S.D.N.Y. 1976) ("The risks entailed in suing one's employer are such that the

25   few hardy souls who come forward should be permitted to speak for others when the

26   vocal ones are otherwise fully qualified"), rev'd on other grounds, St. Marie v. Eastern

27   R.R. Ass'n., 650 F.2d 395 (2d Cir. 1981).

28       Under the terms of the Settlement, Class Counsel requests Incentive Awards for

Plaintiffs of $5,000 each, totaling $10,000, for the extensive efforts in bringing and prosecuting this case, which is in addition to an individual settlement payment. According to the Ninth Circuit, "[i]ncentive awards are fairly typical in class action cases" and "are intended to compensate class representatives for work done on behalf of [a] class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Rodriguez v. West Publ'g Corp., 563 F.3d 948, 958–59 (9th Cir. 2009) (emphasis removed), vacated on other grounds, 688 F.3d 645, 660 (9th Cir. 2012).  Courts should consider "the risk to the class representative in commencing suit, both financial and otherwise," as well as "the amount of time and effort spent by the class representative" and "the personal benefit (or lack thereof) enjoyed by the class as a result of the litigation."  Smith v. CRST Van Expedited, Inc., 2013 U.S. Dist. LEXIS 6049, at *16 (S.D. Cal. filed Jan. 14, 2013) (quoting Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995)) (internal quotations omitted).

Here, all of the factors support approving the award.  First, as a direct result of Plaintiffs' having brought this suit, participating Settlement Class Members will receive substantial payments.  Second, Plaintiffs expended considerable time conferring with Class Counsel, providing factual background and support, analyzing and provided data, and consulting with Counsel during settlement discussions, and thereafter.  Mann Decl. ¶¶ 5, 8-12; Rojas Decl. ¶¶ 5, 8-12.  Third, Plaintiffs "undertook the financial risk that, in the event of a judgment in favor of [defendant] in this action, [the named Plaintiffs] could have been personally responsible for any costs awarded in favor of [defendant]." Vasquez, 266 F.R.D. at 491.

Indeed, incentive awards are particularly appropriate in employment class actions, where they help to alleviate the "stigma upon future employment opportunities for having initiated an action against a former employer."  Campbell v. First Investors Corp., 2012 WL 5373423, at *8 (S.D. Cal. filed Oct. 29, 2012).  See Mann Decl. ¶ 13; Rojas Decl. ¶ 13.  The requested incentive awards are in line with the current trend for such awards and

*below* the range sometimes awarded in similar cases.  See <u>Smith</u>, 2013 U.S. Dist. LEXIS 6049, at *17–18 (noting that incentive awards range from $18,500 to $50,000).

In light of Plaintiffs' willingness to come forward on behalf of the Class, and in light of Plaintiffs' efforts in advancing the litigation, the proposed payment is reasonable. Plaintiffs sought out and obtained the services of counsel, participated in discovery, and assisted throughout the negotiation of the settlement and bringing the case to closure.  In doing so, they have successfully brought and maintained claims that may have never been brought.  See <u>Crab Addison, Inc. v. Superior Court</u>, 169 Cal. App. 4th 958, 971 (2008) ("Current employees suing their employers run a greater risk of retaliation.  For them, individual litigation may not be a viable option . . . . [In addition], employees may be unaware of the violation of their rights and their right to sue.").

## IV. Conclusion.

Whether the Court applies the Common-Fund Method, or the Lodestar Method with a multiplier, the Plaintiffs' requested fee award is reasonable.  Plaintiffs respectfully requests that this Court award attorney fees in the amount of $1,600,000 and reimbursement of costs in the sum of $19,973.78, a total of $1,619,973.78.  Further, it is respectfully requested that the Court award a $5,000 Incentive Award to each Plaintiff totaling $10,000.

DATED:  April 26, 2024

HARRIS & RUBLE

*Alan Harris*

_____
Alan Harris/ Attorney for Plaintiffs

1 | **<u>PROOF OF SERVICE</u>**

I am an attorney for Plaintiff(s) herein, over the age of eighteen years, and not a party to the within action. My business address is 655 N. Central Ave., 17th Floor, Glendale, CA 91203. On April 26, 2024, I served the within document(s):

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS AND INCENTIVE AWARDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

<u>Electronic Service:</u> Based on a court order, I cause the above-entitled document(s) to be served through the CM/ECF system addressed to all parties appearing on the electronic service list for the above-entitled case and on the interested parties in this case:

PAUL HASTINGS LLP
Stephen L. Berry
stephenberry@paulhastings.com
Blake R. Bertagna
blakebertagna@paulhastings.com
695 Town Center Drive
Seventeenth Floor
Costa Mesa, California 92626-1924
Telephone: 1(714) 668-6200
Facsimile: 1(714) 979-1921

I declare under penalty of perjury that the above is true and correct. Executed on April 26, 2024, at Los Angeles, California.

_____
Min Ji Gal

28